The Rochester White Lead Co. *v.* The City of Rochester.

proceed at once, upon the plaintiff's request, to enforce the collection of the collateral security. He has at all times been at liberty to terminate, at pleasure, his forbearance. Under these circumstances, can it be said that the defendant has been guilty of any greater laches or neglect than the plaintiff himself? And if not, shall a court of equity be called into activity to relieve the plaintiff from the consequences of his own default? I am persuaded there is no principle of equity which goes so far. To me there seems to be nothing in the case which, upon the most liberal application of the most favorable decisions, would entitle the plaintiff to a discharge from the payment of the judgment against him. I am of opinion, therefore, that the case was properly decided in the court below.

The other members of the court, without passing upon the question whether the defence was available in the action at law, if any where, concurred in the opinion that the facts did not constitute a ground of relief in equity.

Decree affirmed.

THE ROCHESTER WHITE LEAD COMPANY *vs.* THE CITY OF ROCHESTER.

The corporation of the city of Rochester, having power " to cause common sewers, drains, &c. to be made in any part of the city," directed a culvert to be built for the purpose of conducting the water of a natural stream which had previously been the outlet through which the surface water of a portion of the city had been carried off. A freshet having occurred, the culvert, in consequence of its want of capacity and the unskilfulness of its construction, failed to discharge the waters, so that they were set back upon the factory of the plaintiffs and injured their property situated therein. *Held*, that the city corporation was liable for the damage.

And *held further* that the city was liable although their surveyor (not a professional engineer) advised and directed in respect to the capacity of the culvert.

A municipal corporation, in the construction of its sewers, drains, &c. is bound to exercise that care and prudence which a discreet and cautious individual would use if the whole loss or risk were to be his own. *Per* TAYLOR, J.

Where a duty of a judicial nature is imposed upon a public body, the members of the body, it seems, are exempt from responsibility by civil action for the manner in which the duty is performed.

But where a duty, purely ministerial, is violated or negligently performed by a public officer or body, an injured party may have redress by action.

An ordinance of a city corporation directing the construction of a work within the general scope of its powers, is a judicial act, for which the corporation is not responsible; but the prosecution of the work is ministerial in its character, and the corporation must therefore see that it is done in a safe and skilful manner.

Whether a municipal corporation is liable for an injury resulting to the property of another, from an act strictly within its powers, and unattended by any circumstances of neglect or malice, *quere.*

THE Rochester White Lead Company brought an action on the case against the city of Rochester, to recover damages on account of an injury done to the plaintiffs' factory and to a quantity of white lead situated therein, occasioned, as alledged, by the negligence of the defendants in the construction of a culvert. The case was heard before referees, who reported in the plaintiffs' favor, for the sum of $1652,56. The supreme court sitting in the seventh district, refused to set aside the report, and rendered judgment thereon. The defendants appealed to this court. A statement of the facts, as found by the referees, was incorporated into the record, and the case was this:

A small natural stream of water, having its source about 80 rods west of State-street, in the city of Rochester, crossed that street near the factory of the plaintiffs. This stream was the outlet to the surface waters of about 400 acres of land. In 1835, State-street, at the place where it was crossed by this stream, was directed by the common council of the city to be graded. This was done under the direction of the city authorities, and the grade raised from 4 to 6 feet at the place intersected by the stream. A culvert was constructed under the street for the passage of the water. In 1844 the common council directed the culvert to be extended further west, and to be constructed in such a manner as to carry off all the water of the stream. The culvert was accordingly carried 106 feet further west, the extension being of the same dimensions as the original culvert under State-street. The whole work was done under

the direction of the city superintendent, and the dimensions were such as the city surveyor, who was not a professional engineer, advised would be sufficient. It was built of rough stone and there were two or three angles in it calculated to impede the flow of the water. In March, 1845, after the extension of the culvert, a flood occurred from the rain and the melting of the snow on the tract of land drained through this channel, producing an amount of water which the culvert was unable to pass, in consequence of which the water set back upon the premises of the plaintiffs and injured a quantity of white lead belonging to them.

The referees found that the culvert, in consequence of the smallness of its size and the want of skill in its construction, was insufficient to carry off the water when a great fall of rain and melting of snow occurred, although it was abundantly large for the natural stream. The immediate cause of the injury was the flood before mentioned. Several engineers, who were sworn on the hearing, stated that the culvert was much smaller than it should have been. It was proved to be the practice among skilful engineers, to build culverts large enough to provide against accidental obstructions and extraordinary freshets, and that within this rule the culvert in question should have been at least one-third larger.

*N. Hill, Jr.* for appellants.

*E. Darwin Smith,* for respondents.

TAYLOR, J. A preliminary question is, whether all reasonable precaution, against possible or contingent injuries, was taken ; and whether the culvert was built in a manner so skilful, as to shield the corporation of Rochester from the charge of malfeasance in the execution of their duty. In the construction of a work like this, they were bound to exercise that care and prudence which a discreet and cautious individual would or ought to use, if the whole loss or risk were to be his alone. The counsel for the city contends that as it was larger than the city

surveyor thought necessary, there could no blame attach to the city authorities. The city had seen fit to select for the responsible duty of adviser in these important matters, a man who laid no claim to the skill of a professional engineer. He was their agent; and it will not answer for an individual or a corporation to select an incompetent agent, and then shield themselves from the consequences of his injudicious acts, by justifying under his advice. No careful and prudent man would employ an agent to direct so important a work, destitute alike of education and skill in his particular department of professional science. It seems from the testimony that a skilful engineer would have so directed the construction of the culvert, as to have prevented the injury to the plaintiffs, for which they prosecute this suit. I have no doubt of the insufficiency of this ground of defence. (*Bailey* v. *The Mayor of N. Y.* 3 *Denio,* 540.)

The principal question is whether the corporation of a city are exempt, in consequence of any immunity inherent in their municipal character, from those liabilities for malfeasance, for which individuals and other corporations would be liable in a civil action, by the party injured.

A good deal of obscurity has, in times past, rested upon this subject, arising from the incident that some duties of such corporations are judicial in their nature, while others purely ministerial have to be executed by them; and these duties sometimes so mingle as not to be easily distinguished from each other. Wherever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action, for the motives which influence him, and the manner in which such duties are performed. If corrupt, he may be impeached or indicted; but he can not be prosecuted by an individual to obtain redress for the wrong which may have been done.

But this judicial immunity can be extended no further. The civil remedy depends exclusively upon the nature of the duty which has been violated. When duties which are purely ministeral are cast upon officers whose chief functions are judicial,

and the ministerial duty is violated, the officer, although for most purposes a judge, is still civilly responsible for such misconduct. ( *Wilson* v. *The Mayor of New York*, 1 *Denio*, 599.)

The charter of the city of Rochester confers upon the common council " power to cause common sewers, drains, vaults and bridges to be made in any part of the city." The ordinance of the common council directing such public improvements is judicial in its nature, and extends immunity from private action for damages to those who perform the duty. But there, this immunity ends. The further prosecution of the work is purely of a ministerial character ; the agents to perform it are of their own selection, and they are bound to see that it is done in a safe and skilful manner.

On the argument, the counsel for the appellants cited 2 *John.* 286. This was an action not against a municipal corporation, but against the Western Inland Lock Navigation Company. It was decided that as damages had already been awarded and compensation made to the plaintiff in the first instance, for running the canal through his land, no cause of action existed on that ground. The other point decided was that the law necessarily imposes on the company the duty of keeping this canal in repair ; and in all such cases, where an injury has been sustained by the want of due care and caution of another, such person must be responsible for the damage occasioned by his neglect and omission. In *Martin* v. *Mayor, &c. of Brooklyn,* (1 *Hill*, 545,) the decision is placed by the judge upon the ground that the act complained of was judicial and not ministerial. In the course of his opinion, Cowen, J. says : " I speak not of private corporations, nor of turnpike companies, who are certainly liable for their agents' omissions to keep their road in repair. I concede the liability also of municipal corporations for like omissions, where the duty of repair, or the like, is absolute, and due from them as a corporation. (*Mayor of Lynn* v. *Turner, Cowp.* 86.)

In the case of *Bailey* v. *The Mayor, &c. of New-York,* (3 *Hill*, 531,) the principal ground taken at the circuit, and upon which the cause is supposed to have turned there, was that the

defendants were not chargeable for negligence or unskilfulness in the construction of the dam, inasmuch as the water commissioners were not appointed by them, nor subject to their direction or control. In other words, the commissioners not being their agents in the construction of the dam, the rule *respondeat superior* could not properly be applied. But Nelson, Ch. J. says, "If a public officer be guilty of negligence in the discharge of duties to be performed by himself, he will be held responsible." "Municipal corporations, in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers, and are dealt with accordingly." As such they are bound to repair bridges and highways, and to the discharge of any other duty or obligation to which an individual owner would be subject. (*Bailey* v. *The Mayor, &c. of New-York, supra, and authorities there referred to.*) In the same case in the court of errors, (2 *Denio,* 433,) the chancellor remarks, that "although it was once doubted whether an action of trespass, or trover, or an action on the case for malfeasance would lie against a corporation, it is now settled in England as well as in this state, that such an action may be maintained. It is well settled that a municipal corporation may be made liable *civiliter* in certain cases, like any other corporation or associate person, though it is created mainly for the purpose of local government and is for that purpose intrusted with some of the ordinary attributes of sovereignty."

In the case of *Furse* v. *The Mayor, &c. of N. Y.,* (3 *Hill,* 612,) Nelson, C. J. says: "The sewers in question were constructed by the corporation under the power conferred by the section of the statute (substantially the same as that in the charter of Rochester) already mentioned. If, therefore, we concede that the exercise of the power was in the first instance optional on the part of the corporation, yet, having *elected to act under it,* they must be held responsible for a *complete and perfect execution.*" "It would be highly unjust to allow, that after constructing these works, the corporation might refuse to keep them in repair, and thus leave the street on which they have been placed in a worse condition than before they were put

there. The owners and occupants of houses and lots in the neighborhood having been charged with the expense of the sewers, acquired a right to the common use of them ; and a corresponding duty devolved upon the corporation to keep them in proper condition and repair." By parity of reason, the corporation having undertaken to build sewers, in pursuance of the power conferred by the charter, they were bound to exercise such skill in the construction, and to give such sufficiency of capacity to the drain, as that it should not become a nuisance to the property of those persons who resided in the neighborhood. Or, in other words, having elected to act under the power granted, by charter, they must be held responsible for a complete and perfect execution. (*See Henley* v. *The Mayor, &c. of Lyme Regis,* 5 *Bing.* 91.) In principle, there can be no possible difference. It is the duty of a municipal corporation to build a sewer, so that it shall not become a nuisance, to the neighborhood, as much as it is to avoid the same result, by keeping it in repair, after it has been built. (*People* v. *Corp. of Albany,* 11 *Wend.* 543.) I have not deemed it necessary to rely upon the cases in point, decided in the supreme court of Ohio. In *McCombs* v. *The Town Council of Akron,* (*Ohio R. vol.* 15, *p.* 476, *and see cases there cited,*) the court hold that a municipal corporation can be made liable for an injury, result ing to the property of another, by an act of such corporation, strictly within the scope of its corporate authority, and unattended by any circumstance of negligence or malice. It is not necessary to take that extreme ground in the decision of the case before us. The doctrines heretofore held by eminent judges in our own courts, are sufficient, and we must affirm the judgment of the court below.

Judgment affirmed.