STACKHOUSE *v.* THE CITY OF LAFAYETTE.

MUNICIPAL CORPORATIONS.—LEGISLATIVE AND JUDICIAL ACTS OF.—When duties of a legislative or judicial nature are imposed by law upon a municipal corporation, and the proper exercise of them depends upon the judgment of those of whom they are required, the corporation is not responsible in damages either for a failure to perform them, or for errors in their performance.

SAME.—LIABILITY FOR MINISTERIAL ACTS.—But where a duty of a purely ministerial character is positively enjoined by law, or arises by necessary implication, the corporation is liable for damages resulting from a neglect to perform the duty, or from unskillfulness in its performance.

SAME.—Where a municipal corporation has granted a right of way through a street to a railroad company, and the company, solely for its own use, erects a culvert on the street, the municipal corporation is not liable for an injury resulting to an individual from an overflow of water caused by the defective construction of the culvert.

APPEAL from the *Tippecanoe* Circuit Court.

ELLIOTT, J.—The appellant filed a complaint against the city of *Lafayette*, which, in substance, is as follows: That on the 15th of *September*, 1852, the defendant, by a public ordinance, (which is copied into the complaint,) under the corporate name of the president and trustees of the town of *Lafayette*, did suffer and permit the *New Albany and Salem Railroad Company* to occupy and use a portion of *Mississippi* street, now called *Fifth* street, in said city, as a track for its road, and allowed said railroad company to keep and maintain a culvert where the railroad track on said street crosses "*Pearl* river," in said city; that said culvert is of insufficient capacity to carry off the water in its natural course and flow in said stream, and obstructs the same, of all of which the defendant had notice; that on the 15th of *September*, 1862, said culvert, for want of sufficient capacity as aforesaid, caused the water to flow back and submerge lot number 60 in *Taylor, White & Ellsworth's* addition to the town, (now city) of *Lafayette*, and caused the same to flow into the dwelling house and stable of the

plaintiff to the height of six feet, and caused great damage to the plaintiff by injuring and destroying certain personal property situated in said dwelling and stable, (a bill of particulars of which, amounting to the sum of $34, is filed with the complaint,) and also by injuring said lot, house and stable to the plaintiff's damage, $1,000.

The defendant demurred to the complaint, because it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer and rendered final judgment for the defendant. The ruling of the court in sustaining the demurrer presents the only question in the case.

The city of *Lafayette* is incorporated under the general law. The ordinance, which is made a part of the complaint, was passed in 1852, by the president and trustees of the town of *Lafayette*, before its incorporation as a city. So far as it relates to the question involved in this suit, it simply grants to the railroad company "the right of way to locate the railroad through any street or alley in said town." Under this grant of the right of way the railroad was located on *Mississippi* street. In crossing "*Pearl* river" it was necessary that the company should construct a bridge, or culvert, as a part of the track or road-bed. The culvert so erected was for the use of the railroad company, and not for the town or public. It was not erected as an improvement of the street, but as a part of the railroad, and was the property of the railroad company.

The question, then, presented by the record is this: Is the city liable for the damages sustained by a person, caused by an insufficient culvert erected in a street by a railroad company, to which the city has granted the right of way upon the street, for its own use, and as a part of its road-bed? It was, undoubtedly, the duty of the railroad company to construct the culvert with sufficient capacity to give free vent to the water flowing in "*Pearl* river," and if the culvert was made too small, and by reason thereof the water was obstructed in its passage, and set back upon the plaintiff's property, causing the injury complained of, the

railroad company is clearly liable. Is the city also liable? In the examination of this question we are not favored with a brief by the counsel for the appellee.

The act providing for the incorporation of cities confers upon the common council power to pass ordinances "to regulate all bridges, culverts, sewers and the location thereof." 1 G. & H., 226. And section 59 of the same act provides that, "The common council shall have exclusive power over the streets, highways, alleys and bridges within such city, and to lay out, survey and open new streets and alleys, and straighten, widen and otherwise alter those already laid out, and to make repairs thereto, and to construct and establish sidewalks, crossings, drains and sewers."

From these provisions it is argued by the appellant that the city has the exclusive power to remedy the evil complained of in this suit, and having failed to exercise that power is responsible to the plaintiff. We are not aware of any rule of law by which the city corporation could sustain an action to recover damages sustained by the plaintiff for the private injury complained of. But we presume the point intended to be pressed by the argument is, that the common council had the power to compel the railroad company to reconstruct the culvert, and make it of sufficient capacity to allow free passage to the water, and thereby have avoided the injury; and having neglected to do so, that the city is responsible to the plaintiff. If the culvert had been erected by the direction of the city council, in the improvement of the street, or otherwise, for the use of the city, but so improperly or unskillfully as to cause the injury complained of, there is abundant authority for saying that the city would be responsible. But the law does not hold municipal corporations liable to individuals for the failure to exercise, or for the improper exercise of every power or duty that may be conferred or enjoined upon them. Many of the powers and duties of such corporations are in their nature legislative, and some are judicial, while others are purely ministerial. Where the duties

imposed are of a legislative or judicial nature, and the proper exercise of them depends upon the judgment of those of whom they are required, the corporation is not responsible in damages, either for a failure to perform them, or for errors in their performance. But, where duties of a purely ministerial nature are positively enjoined on them by law, or arise by necessary implication, they are responsible for the damages resulting to individuals, either from a neglect to perform them, or from their performance in an improper manner.

In *The Rochester White Lead Company* v. *The City of Rochester*, 3 N. Y. 463, which was an action brought by the former against the city for an injury to a quantity of white lead, situated on the plaintiffs' premises, by water set back on the same in consequence of the improper construction by the city of a culvert over a natural stream of water, the court held the city liable. In the discussion of the question involved in the case, TAYLOR, J., said: "The principal question is whether the corporation of a city is exempt, in consequence of any immunity inherent in its municipal charter, from those liabilities for malfeasance, for which individuals and other corporations would be liable in a civil action by the party injured. A good deal of obscurity has, in times past, rested upon this subject, arising from the incident that some duties of such corporations are judicial in their nature, while others purely ministerial have to be executed by them; and these duties sometimes so mingle as not to be easily distinguished from each other. Wherever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action, for the motives which influence him, and the manner in which such duties are performed. If corrupt, he may be impeached or indicted; but he can not be prosecuted by an individual to obtain redress for the wrong which may have been done.  *    *    *  When duties which are purely ministerial are cast upon officers

whose chief functions are judicial, and the ministerial duty is violated, the officer, although for most purposes a judge, is still civilly responsible for such misconduct. The charter of the city of *Rochester* confers upon the common council 'power to cause common sewers, drains, vaults and bridges to be made in any part of the city.' The ordinance of the common council directing such public improvements is judicial in its nature, and extends immunity from private action for damages to those who perform the duty. But there this immunity ends. The further prosecution of the work is purely of a ministerial character, the agents to perform it are of their own selection, and they are bound to see that it is done in a safe and skillful manner." After referring to the argument in the case of *Furze* v. *The Mayor, &c., of N. Y.,* 3 Hill 612, it is further said: "By a parity of reason, the corporation having undertaken to build sewers, in pursuance of the power conferred by the charter, they were bound to exercise such skill in the construction, and to give such sufficiency of capacity to the drain as that it should not become a nuisance to the property of those persons who resided in the neighborhood. Or, in other words, having elected to act under the power granted by charter, they must be held responsible for a complete and perfect execution."

*Lloyd* v. *The Mayor, &c., of the City of New York,* 5 N. Y. 369, was an action to recover the value of a horse belonging to the plaintiff, which he drove in the night time into an excavation in *Broome* street, in the city, causing his death. The excavation was made the day previous, by the direction of an officer of the city corporation having charge of the cleaning of public sewers, in order to cleanse a sewer, and was suffered to remain open during the night without any light to give notice of its presence. FOOTE, J., said: "The corporation of the city of *New York* possesses two kinds of powers, one governmental and public, and to the extent they are held and exercised is clothed with sovereignty; the other private, and to the extent they are held

and exercised is a legal individual. The former are given and used for public purposes, the latter for private purposes. While in the exercise of the former, the corporation is a municipal government; and while in the exercise of the latter is a corporate legal individual. * * * The act which caused the injury in the present case was performed under the power and duty to clear the sewers of the city. Legislation, or in other words the establishing of rules and regulations in respect to cleaning the sewers, or keeping them in a state of cleanliness, is one thing, and the act of cleaning them is another. The power and duty to perform the latter is clearly ministerial, and falls under the class of private powers. The principle *respondeat superior* consequently applies."

In *Furze* v. *The Mayor, &c., of the City of New York,* 3 Hill 612, NELSON, J., says: "The sewers in question were constructed by the corporation under the power conferred by the section of the statute," (substantially the same as that in the charter of *Rochester,*) "already mentioned. If, therefore, we concede that the exercise of the power was, in the first instance, optional on the part of the corporation, yet, having elected to act under it, they must be held responsible for a complete and perfect execution. It would be highly unjust to allow that, after constructing these works, the corporation might refuse to keep them in repair, and thus leave the streets on which they have been placed in a worse condition than before they were put there. The owners and occupants of houses and lots in the neighborhood, having been charged with the expense of sewers, acquired a right to the common use of them; and a corresponding duty devolved upon the corporation to keep them in proper condition and repair."

In the case of *Ross* v. *The City of Madison,* 1 Ind. 281, *Ross* was the owner of a tan yard, with tenements and fixtures, and a quantity of leather tanned and in the process of tanning. The corporate authorities erected a culvert and embankment across a run or brook on *Second*

street, in the city, which, in consequence of being unskill-
fully and carelessly constructed, caused a large quantity of
water to overflow the tan yard, and thereby injured the prop-
erty therein. The court below rejected the evidence by which
the plaintiff sought to prove that the culvert was erected
by the direction of the city authorities, in consequence of
which he was defeated in that court. This court held that
the evidence was legitimate, and should have been admit-
ted. In delivering the opinion of the court, SMITH, J., said:
"It may also be considered as settled that municipal corpora-
tions are responsible, to the same extent and in the same
manner as natural persons, for injuries occasioned by the
negligence or unskillfulness of their agents in the construc-
tion of works for the benefit of the cities or towns under
their government."

The *Wayne County Turnpike Company* v. *Berry,* 5 Ind. 286,
was an action brought by *Berry* against the turnpike com-
pany to recover damages sustained by him from a fall
through a bridge, alleged to belong to said company, and
which was out of repair. The bridge was within the cor-
poration of *Cambridge City.* It was built by the *White
Water Valley Canal Company,* before the organization of the
turnpike company. When the canal company constructed
the canal, they cut across an existing highway, subsequently
the turnpike road of the defendant, rendering it impassable.
"The bridge was then erected, not for the use of the canal
company, or as a part of her property, but to restore the
highway. The bridge was in the place of the removed earth.
It became a part of the highway." After the bridge was
built, and while it was yet standing and used as a part of
the public highway, the turnpike company was incorpor-
ated, with the right to convert the highway into a turn-
pike, and to charge tolls thereon, and burdened with the
duty of keeping it in repair. The turnpike company re-
ceived the highway as it was, and subject to existing ease-
ments. In deciding the case, PERKINS, J., said: "We think,
as to the public, the turnpike company was bound to keep

the bridge in repair. So also may have been the canal company. And if said highway was along a street of *Cambridge City*, that corporation, likewise, may have been bound to keep said street and bridge in a passable condition. We see no reason why it might not happen that a city, a turnpike, a canal and a railroad company should, as to the public, be liable for defects in a bridge, so that a person injured might elect as to which he would proceed against, leaving the companies to settle the ultimate liability between themselves." The liability of the turnpike company in that case, under the facts stated, was clear and undeniable, and that was the only question before the court. The suggestion of the learned judge, that the city of *Cambridge* might also be liable, if the turnpike was along a street of that city, is but an *obiter dictum*, and cannot be regarded as authority. But we do not find it necessary to decide that question here. If such a liability existed, it was because the bridge, when erected, became a part of the public street, and as such the city was bound to keep it in repair, notwithstanding the primary liability of the turnpike company. Such is not the question in this case. Here the culvert was not erected by the city, nor for its use or benefit, nor as an improvement of the street, but it was built, as is alleged, by the railroad company, as a part of the railroad, for its own use. It was the property of the railroad company and not of the city.

In most of the cases to which we have referred, the question discussed is that of the liability of municipal corporations for damages resulting from a failure to repair public improvements constructed by or under the direction of the corporate authorities within their corporate limits, and for the use and benefit of the public.

By the statute of 22 Henry VIII, entitled "For bridges and highways," which Lord COKE says "was in affirmance of the common law," the duty of repairing bridges and public highways was imposed upon the counties, unless

it could be proved that some other person, lands or body politic was bound to make such repairs; or in other words in case it could not be shown what party ought, of right, to make the repairs, the duty devolved upon the county. *The State* v. *The Inhabitants of Gorham*, 37 Maine 451. This *prima facie*, but contingent, liability of the counties to repair public highways and bridges, existing both at common law and by the statute 22 Henry VIII, is recognized by the English cases. See *Regina* v. *Inhabitants of Wilts*, 1 Salk. 359; *Rex* v. *Inhabitants of Nottingham*, 2 Lev. 112; *The King* v. *Inhabitants of Kent*, 13 East 220. The same rule prevails by statute in *Massachusetts*. *Smith* v. *The Inhabitants of Wendell*, 7 Cush. 498; *Perley* v. *Chandler*, 6 Mass. 453. And also in *New York*. *Dygert* v. *Schenck*, 23 Wend. 446.

But the question presented in the case under consideration is not whether the city is liable for a failure to repair a street or culvert constructed for the use and convenience of the public, or for the erection of a culvert in an unskillful or improper manner by the city authorities, thereby causing the injury complained of, but whether the city is liable for an injury done to the plaintiff by the unskillful construction of a culvert by a railroad company, as a part of its road-bed and for its own use, simply because the culvert is on one of the public streets of the city. The complaint is not that the free use of the street was in any way obstructed, nor that the injury occurred in passing over or otherwise using the street. Indeed, it is difficult to see that the existence of the street had any relation to the injury, as, in its absence, the culvert in the same place, if not of sufficient size to give free vent to the water flowing in the stream, would have produced the same injury.

In the case of *Ross* v. *The City of Madison*, *supra*, as in the case at bar, the injury complained of was caused by the erection of an insufficient culvert in a public street of the city, and the plaintiff was defeated in the court below because the court rejected the evidence by which he sought

to prove that the culvert was erected by the direction of the city council, as an improvement of the street. This court reversed the judgment for the reason that the evidence offered was material and proper. The decision of the case is clearly based on the hypothesis that the city was only liable in the event that the culvert was constructed by its authority and direction.

After a somewhat careful examination of the authorities, we have not been able to find any one to justify us in holding the city liable under the facts presented in the complaint in this case. We think the Circuit Court did right in sustaining the demurrer to the complaint.

The judgment is affirmed, with costs.

*R. Jones* and *J. M. La Rue,* for appellant.

*W. C. L. Taylor,* for appellee.