Brinkmeyer and Others *v*. The City of Evansville.

BRINKMEYER and Others *v*. THE CITY OF EVANSVILLE.

MUNICIPAL CORPORATION.—NATURE OF POWERS.—A municipal corporation is, for the purposes of its creation, a government possessing, to a limited extent, sovereign powers, which, in their nature, are either legislative or judicial, and may be denominated governmental or public.

SAME.—EXERCISE OF POWERS.—The extent to which it may be proper for a municipal corporation to exercise the powers vested in it, as well as the mode of their exercise within the limits prescribed by the law creating them, is, of necessity, entrusted to the judgment, discretion and will of the properly constituted authorities to which they are delegated.

SAME.—LIABILITY.—A municipal corporation being public and sovereign in its nature, is not liable to be sued either for a failure to exercise powers entrusted to the judgment and discretion of its proper authorities or for errors committed in their exercise.

SAME.—LOSS BY FIRE.—The power conferred on the city of *Evansville* by the special charter of 1847, (Local Acts 1847, p. 14) to organize and regulate a fire department, for the purpose of preventing and guarding against damage by fire, is a legislative or judicial one, and the failure of the corporate authorities to exercise the power to the full extent necessary to protect the citizens from such damages, does not render the city liable to an action therefor.

APPEAL from the *Vanderburgh* Circuit Court.

ELLIOTT, J.—Complaint by *Brinkmeyer* and others, partners, doing business in the firm name of "*Brinkmeyer & Co.*," against *The City of Evansville*, to recover the value of a building belonging to the plaintiffs, situate on lots within the corporate limits of said city, used as an iron foundry, together with certain machinery and other property therein, which were destroyed by fire.

The court sustained a demurrer to the complaint, and rendered a final judgment for the defendant for costs. The plaintiffs excepted, and appeal to this court. The ruling of the court on the demurrer is the error assigned.

The complaint alleges that the city of *Evansville* is a corporation, organized under a special charter, approved *January* 27, 1847; that among the powers conferred on the common council of said city are, 1. "To ordain, establish, and put in execution such rules, by-laws, ordinances and

regulations as shall be deemed proper and necessary for the good government of the city and the well being of the inhabitants thereof," &c.; 2. Especially "to make, establish and regulate public wells, cisterns, reservoirs and pumps; to erect engine houses; to prevent and guard against damage by fire; to purchase fire engines and fire apparatus; to organize fire companies and regulate and govern the same, and to prescribe and regulate the duty and conduct of members of fire companies, and other persons in relation to fires;" that the common council, in the exercise of the powers vested in them, purchased and provided sundry fire engines, to be operated by the hands of men, and organized companies to propel and operate the same, and also purchased sundry steam engines, to be used in extinguishing fires, and employed engineers, captains of companies, hose directors, and other persons to protect the property in the city against damage by fire and to extinguish fires occurring within the city; that on the —— day of ——, 1866, the plaintiffs were the owners of lots eight, nine and ten, situate in that part of the city called *Lamasco,* on which was a building, used by the plaintiffs as an iron foundry, of the value of $4,500, which contained an engine, flasks, patterns, tools and implements appertaining to said foundry, &c., of the value of $30,612; that the common council, in exercising the powers aforesaid, regardless of their duty, negligently and carelessly failed to provide proper supplies of water, or good and efficient engines, or to cause the engines provided to be kept in repair and furnished with a sufficiency of good hose, and also negligently and carelessly employed unskillful, inefficient, careless and incompetent persons to manage, control, use and operate said engines and hose, and negligently and carelessly failed to provide proper and necessary means of propelling said engines from place to place in the city; that while the common council were thus careless and negligent, &c., to-wit, on, &c., at, &c., as aforesaid, another house, situated at least fifty feet from the house of the plaintiffs aforesaid, was con-

sumed by fire, and by reason of the failure of the council to provide water, or to provide and keep in repair a sufficient number of good engines properly supplied with good hose, and by reason of the unskillfulness, carelessness, incompetency and negligence of the persons employed to control and operate the engines, &c., as aforesaid, and by reason of said engines and those being insufficient in number, and inefficient, defective, and out of repair, the heat, flames and fire of and from the said other house, so consumed, were communicated to, ignited and consumed the plaintiffs' house and the other property of plaintiffs before mentioned.

By reason whereof the plaintiffs sustained damages to the amount of $18,000, for which they pray judgment.

The appellants' counsel conclude their argument in favor of the complaint by the statement of two legal propositions, which are, as they claim, supported by authority and sustain the sufficiency of the complaint to entitle the plaintiffs to recover. They are stated thus:

"1. When by law a municipal corporation possesses a power to be exercised for the public good, whether the language conferring the power be imperative or permissive, it is incumbent upon the corporation to exercise such power whenever and as soon as those who exercise the legislative functions of the corporation shall deem it practicable to properly execute it.

"2. That when the legislative authority has determined that it is practicable and expedient to execute a power conferred, and the corporation enters upon its execution, the corporation, its officers and agents are bound to exercise reasonable and ordinary care, skill and diligence in executing it, and must respond in damages for any failure to do so."

Several cases are cited in support of these propositions, the first of which is *Stackhouse* v. *The City of Lafayette*, 26 Ind. 17. This was an action against the city for damages occasioned by back-water in a stream, over which a railroad

company had constructed an insufficient culvert, at a point where the stream crossed a street, over which the city had granted the right of way to the railroad company. The culvert being too small for the free passage of the water at all times, it was flowed back upon the plaintiff's premises, and caused the injury complained of. The culvert not having been erected by the city, or for the public use, it was held that the city was not liable. It is said, in the opinion of the court in that case, in discussing the question of the liability of the city, that "the law does not hold municipal corporations liable to individuals for the failure to exercise, or for the improper exercise of every power or duty that may be conferred or enjoined upon them. Many of the powers and duties of such corporations are in their nature legislative, and some are judicial, while others are purely ministerial. Where the duties imposed are of a legislative or judicial nature, and the proper exercise of them depends upon the judgment of those of whom they are required, the corporation is not responsible in damages, either for a failure to perform them, or for errors in their performance. But, where duties of a purely ministerial nature are positively enjoined on them by law, or arise by necessary implication, they are responsible for the damages resulting to individuals, either from a neglect to perform them, or from their performance in an improper manner." This, we think, is a correct enunciation of the law in the class of cases to which it is applicable.

The *Rochester White Lead Company* v. *The City of Rochester*, 3 N. Y., 463, is the next case cited by the appellants. It was an action to recover for an injury to a quantity of white lead, situate on the plaintiffs' premises, resulting from the overflow of water, caused by the improper construction by the city of a culvert over a natural stream of water, and it was held that the city was liable.

*Lloyd,* v. *The Mayor, &c., of the City of New York,* 5 N. Y. 369, is also cited. That was an action to recover the value of a horse, driven by the plaintiff, in the night time, into a

pit excavated in one of the streets of the city, thereby causing his death. The excavation was made the day previous by the direction of a city officer having charge of the cleaning of public sewers, and was suffered to remain open during the night, without any light to give notice of its presence. It was held that the city was liable.

The appellants' counsel also refer to the case of *Fruze* v. *The Mayor, &c., of the City of New York*, 3 Hill 612; in which it was held that the city, having constructed a sewer for public use, was bound to keep it in proper condition and repair.

A municipal corporation is, for the purposes of its creation, a government possessing to a limited extent sovereign powers, which, in their nature, are either legislative or judicial, and may be denominated governmental or public. The extent to which it may be proper to exercise such powers, as well as the mode of their exercise, by the corporation, within the limits prescribed by the law creating them, are, of necessity, entrusted to the judgment, discretion and will of the properly constituted authorities, to whom they are delegated. And being public and sovereign in their nature, the corporation is not liable to be sued, either for a failure to exercise them, or for errors committed in their exercise. But when duties of a purely ministerial character are expressly enjoined by law, on such corporations, or arise by necessary implication, they are responsible for any damages resulting to individuals from a neglect to perform them, or from their performance in an improper manner.

These two classes of duties and obligations are sometimes so intimately connected that it is not always very easy to distinguish the one from the other.

It is conceded by the counsel for the appellants that the power conferred on the city to organize and regulate a fire department, for the purpose of preventing and guarding against damage by fire, is a legislative or judicial one, and that if the common council had deemed it inexpedient to

undertake its execution, and had done nothing in reference to it, the plaintiffs would be without remedy. But the right to recover seems to be based on the idea that the common council, having undertaken to execute the power, or in other words, to act under it, all else became mere ministerial duties, and that the city thereby became responsible; that everything within the scope of the power conferred to render the fire department complete and efficient should be done; or in other words, that the power should be exercised to the fullest extent necessary to protect the citizens from loss by fire, and that any failure therein would render the city liable for such losses. We are not aware of any authority to sustain so broad a proposition, and do not think that any such can be found. A proper supply of water is quite as essential in the extinguishment of fire as proper fire engines, and one of the causes of complaint is that the common council "negligently and carelessly failed to provide proper supplies of water."

Among the powers conferred on the common council is, "to make, establish and regulate public wells, cisterns, reservoirs and pumps." Now, it would seem difficult to contend, with any degree of plausibility, that because the common council should provide for the construction of wells and cisterns in one part of the city, where they regarded them as most needed in supplying water in cases of fire, they were therefore bound to construct wells or cisterns in near proximity to every house in the remotest part of the city, as a safeguard against loss by fire, or be responsible for every such loss. Such, however, would be the result of the principle contended for.

It is also alleged that the common council purchased sundry fire engines, some of which were worked and operated by men, and others by steam, but that they were not good and efficient ones; that they also failed to supply a sufficiency of good hose, and the proper and necessary means of propelling the engines from place to place. The number and

character of the engines purchased for the use of the city, as well as the means of propelling them from place to place, and the quantity of hose proper to be purchased, were all matters resting in the judgment and discretion of the city council; they were in no sense ministerial obligations, and no liability devolves on the city from the manner of their exercise, or errors of judgment committed therein.

The only matters complained of which could, with any reason, be regarded as ministerial, are the alleged negligent failure to keep the engines in proper repair, and "the unskillfulness, carelessness, incompetency and negligence of the persons employed to control and operate them." If, however, there was not an adequate supply of water in the reasonable vicinity of the fire, to extinguish the flames, as the plaintiffs allege, it is difficult to see how the loss can be attributed to the want of care and skill on the part of the engineers, or to the fact that the engines were not in good repair, as both engines and competent engineers would have been useless without an adequate supply of water. But we place the decision of the case upon broader grounds. It could not have been intended by the legislature, in conferring on the common council power to organize a fire department, that they should thereby undertake, absolutely, to prevent loss by fire in all cases, or become responsible as insurers in case of failure. Human skill and ingenuity are not competent always to resist the power of that destructive element, and the most that can be expected from the public authorities is, the adoption of such means as may be reasonably within their power, to guard as far as they may against such losses, and aid in extinguishing such fires. These are all legislative or judicial in their nature, depending upon the wisdom and judgment of the common council, and cannot be the subject of legal liability to individuals.

There is but little, if any, analogy between the powers and duties devolving on these municipal governments, in

the organization of a fire department, and those in relation to the improvement of streets and the construction of bridges, culverts and sewers. A street, when improved, is a public highway, open to the free use of all, and it is an old and well established principle that the corporation is bound to keep it in proper repair or condition, and is responsible for the damages caused by a neglect of that duty. The injury in such a case is readily traceable to its legitimate cause—the improper condition of the highway, because it results directly from it. It is otherwise, however, in case of loss by fire. There the loss is caused directly by the fire, and not by the want of skill in an engineer, or from the fact that the engine was out of repair. These facts had nothing to do in igniting the flames. Possibly, if the engines had been in good order, and in the hands of a skillful engineer, all other necessary aids concurring, the flames might have been arrested, and the fire extinguished, and much of the damage thereby avoided; still the want of skill in the engineer, or the fact that the engine was out of repair, would only in a remote degree contribute to the injury. The uncertainty, in such cases, of tracing the failure to its proper and legitimate cause, would necessarily introduce a species of most unsatisfactory and uncertain evidence, and would result in practically making municipal corporations insurers against all losses by fire, within their corporate limits. Fire departments have existed in cities for time out of mind, and there is not, perhaps, a city in existence, in which the corporate authorities have not exercised the power to use all proper means for the prevention of losses by fire. It is an important branch of such municipal governments and has engaged their most earnest and serious consideration. And yet, notwithstanding the many millions of property annually destroyed in cities by fire, counsel have not referred us to a single authority for holding the corporation liable for such losses, and if any such exist, we are not aware of it.

In our judgment, both reason and the soundest public policy forbid that such a liability should be imposed.

The judgment is affirmed, with costs.

*J. M. Shackelford, S. R. Hornbrook* and *J. G. Jones,* for appellants.

*A. Iglehart* and *C. Denby,* for appellee.