Sylvester *v.* Macauley, Mayor, and Members of Common Council.

# IN GENERAL TERM.

DAVID SYLVESTER *v.* DANIEL MACAULEY, Mayor, JOHN S. NEWMAN, *et al*, Members of the Common Council, appellants.

Appealed from RAND, Judge.

*Common Council as Public Agents—Powers and Jurisdiction of—Liability for illegal proceedings—Relation of Mayor to.*

The Common Council, so far as their adm.nistrative or ministerial duties extend, are agents of the city, and as such may contract, among other things, for street improvements.

The jurisdiction of a Common Council is confined to that territory only, which is within the boundaries of the city.

The Council has no power to contract for improvements beyond the city limits, and no assessment will lie, therefore, against property holders abutting such improvements.

A person contracting for a street improvement has a right to presume that the Council had used the proper diligence to acquaint themselves with the city boundaries.

Public agents exceeding, negligently using, or abusing their authority, are liable to the injured party, and the Common Council, as such, in care-

lessly authorizing improvements beyond their jurisdiction, become personally liable for the value of the work done in obedience to their authority and direction. It is not sufficient to show that they acted *bona fide* and in ignorance of the true city boundary. They are bound to the exercise of reasonable skill and diligence in acquainting themselves with the territorial limits of the city, and are supposed to know the limit of their power.

Affirmative participation in such unauthorized action of the Council is necessary to attach responsibility for its acts.

The Mayor of a city, under the laws of this State, is *ex officio* President of the Common Council, and as such is required by law to attend their proceedings, and in case of an equal division, gives the casting vote, but in no other sense is he a part of the Council, and is not liable for the consequences of proceedings of the Council in excess of its jurisdiction, simply because he signed the ordinance.

*N. B. & E. Taylor*, for appellee.

*J. S. Harvey*, *R. B. Duncan* and *John S. Duncan*, for appellants.

NEWCOMB, J.—Sylvester filed his complaint against Mary E. Noble, Winston P. Noble, her husband, Daniel Macauley, Mayor, and John S. Newman, Leon Kahn, Temple C. Harrison, William D. Wiles, James H. Woodburn, Wm. W. Weaver, Erie Locke, Isaac Thalman, James McB. Shepherd, Edward Reagan, Austin H. Brown, Robert Kennington, John L. Marsee, Thomas Cottrell, Christopher Heckman, Courtland Whitsett, John Pyle and Frederick Thoms, members of the Common Council of the city of Indianapolis, in which he alleged that on April 30, 1870, said persons described as Mayor and Common Councilmen passed an ordinance for the grading and graveling of Market street, in said city, from the old corporation line east to Highland street, and that the expense of said improvement, except so much as might be occupied by public grounds, owned by said city bordering thereon, and for street and alley crossings, should be assessed against and collected from the owners of the lots bordering on said street. That after the passage of

this ordinance the Common Council advertised for proposals for doing the work mentioned in the ordinance; that the plaintiff was a bidder for said work; that his bid was accepted, and on May 21, 1871, plaintiff entered into a written contract for grading and gravelling said street in the manner prescribed in said ordinance, and that he completed said work to the satisfaction and acceptance of the civil engineer of said city, who certified the same to the said Council.

That Mary E. Noble was the owner of a parcel of ground fronting on that part of Market street along which said improvement was made, that the amount assessed against her property for said improvement was $348.54, which she refused to pay, and on December 26, 1870, plaintiff presented his affidavit of these facts to the Council, and asked that a precept might issue for the sale of her real estate so improved, which precept the Council ordered should issue, but which order was subsequently revoked, for the alleged reason that said real estate and Market street improvement was not within the corporate limits of the city of Indianapolis. And the complaint alleges that said street in front of Mrs. Noble's property was not in fact within said city; that he was ignorant of that fact when he entered into said contract, and did said work, but that it was known to the defendants, the Mayor and Councilmen, although, by said ordinance, proposal and contract, they represented and led plaintiff to believe that it was in said city, and that they had jurisdiction and authority to order said improvement and enter into the contract described, and that by said action he was thrown off his guard and prevented from making inquiry, &c.

That Market street west of the old corporation line had been, ever since the incorporation of said city, and was at the time of the passage of said ordinance, &c., a street of the city; and that the part of said street east of said old corporation line to Highland street, so ordered and con-

tracted to be improved, had been .for fifteen years prior thereto, and was at the time a continuation of said Market street, called by that name, and used as, and he believed the same was a street of said city.

The complaint prayed, among other things, for a personal judgment against the Mayor and members of the Council for the amount due for the work done on said street in front of Mrs. Noble's property, in case it should be held that the property was not liable to said assessment.

Noble and wife demurred to the complaint, their demurrer was sustained and final judgment rendered in their favor at Special Term. The other defendants demurred, but their demurrers were overruled.

Kahn answered that, though a member of the Council, he was not present when the ordinance passed, nor when the contract was let, and had taken no part in the transactions complained of. On the hearing his answer was sustained and final judgment rendered in his favor.

Macauley answered specially, denying all fraud, &c., and alleging that as Mayor of the city it was his duty to preside over the Common Council when in session, and to sign the ordinances it might pass ; that he did so preside at the time of the passage of the ordinance in question, and signed the same as Mayor; but that he did not vote for the ordinance, (as he could not except in case of an equal division of the Council) nor advise the passage thereof; "that at the time the ordinance passed, and during all the subsequent proceedings, until the precept was ordered in by the Council," he supposed and believed that so much of Market street as was proposed by said ordinance to be improved, was within the corporate limits of Indianapolis, and that the Council were acting within the scope of their authority ; that the plaintiff had the same belief and the same knowledge on the subject. To this answer a demurrer was sustained,—the defendant excepted.

All the Councilmen except Kahn answered, admitting that as members of the Council they voted for said ordinance and to approve the letting of the contract to plaintiff; that they so voted by mistake, without fraud or intentional wrong, and under a misapprehension as to the locality of so much of Market street as it was proposed to improve; that plaintiff and the owners of the lots of land fronting on, &c., at the time of the passage of the ordinance, the letting and performance of the work, &c., believed that that portion of Market street lying, &c., was within the city; that on that point plaintiff had like knowledge with said defendants, and that they acted in good faith as members of the Council, and without any intention of defrauding, or injuring the plaintiff. Demurrers were sustained to these answers, and the defendants having declined to answer further, after hearing proof of plaintiff's damages, final judgment was rendered against Macauley and all the Councilmen but Kahn.

The questions arising on appeal are as to the sufficiency of the answers.

The record presents the case of a mutual mistake by the parties as to the actual boundary of the city of Indianapolis at the points named in the proceedings had by the Council; and the question to be decided is, whether the members of the Council, acting in good faith under the belief that the territory described was a part of the city, and having made no representations to the plaintiff on that subject other than appear in their official proceedings in advertising for bids and making the contract with the plaintiff set out in his complaint, are personally liable to him for the value of the work he did on the supposed street, because they exceeded their statutory authority in ordering the improvement, and contracting with the plaintiff in their official capacity, for its execution?

Neither the complaint, nor answer informs us of the cause of this mistake as to the city boundary, further than it may

be inferred from the statement of the complaint that the thoroughfare in question had been for fifteen years used as a street, and was a continuation, and called by the name of Market street, from the old corporation line east to Highland street. Whether proceedings had been had by the City Council to annex this territory, which had, subsequently to the contract with plaintiff, been found inoperative for that purpose; or whether the County Commissioners had ordered its annexation to the city, without having taken all the statutory steps requisite thereto, or whether there was a confusion in the eastern boundary of the city, which, by a subsequent correction, was located west of the line of improvement named in the contract with the plaintiff, does not appear.

If the general principles of the law of agency are applicable to this case, the members of the Council who invited bids for the work described in the complaint, and voted to approve the contract, are liable in their individual capacity for the value of the work done under the contract.

In discussing the personal liability of agents, Mr. Story says: " Whenever a party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will, (in some form of action) be personally responsible therefor to the person with whom he is dealing, for, or on account of his principal. There can be no doubt that this is, and ought to be the rule of law in the case of a fraudulent representation made by the agent, that he has due authority to act for his principal, for it is an intentional deceit. The same rule may justly apply, where the agent has no such authority, and he knows it, and he nevertheless undertakes to act for the principal, although he intends no fraud. But another case may be put, which may seem to admit of more doubt; and that is, when the party undertakes to act, as an agent, for the principal, bona fide believing that

he has due authority, but in point of fact, he has no authority, and therefore he acts under an innocent mistake. In this last case, however, the agent is held by law to be equally as responsible as he is in the two former cases, although he is guilty of no intentional fraud, or moral turpitude. This whole doctrine proceeds upon a plain principle of justice, for every person so acting for another, by a natural, if not a necessary, implication, holds himself out as having competent authority to do the act; and he thereby draws the other party into a reciprocal engagement." Story on Agency, § 264; *Long* v. *Colburn*, 11 Mass., 97; *Bullou* v. *Talbott*, 16 Mass., 461; *Feeter* v. *Heath*, 11 Wendell, 477; *Smout* v. *Ilbery*, 10 Mess. & Welsb., 1, 9, 10.

And a public agent who exceeds his authority, or who negligently uses or abuses his authority, is liable to the party injured thereby. "And in cases of this sort," says Mr. Story, "it is not sufficient for public agents to show that they acted *bona fide*, and to the best of their skill and judgment, for they are bound also to conduct themselves with reasonable skill and diligence in the execution of their trust." Story on Agency, §§ 319, 320; *Bullou* v. *Talbott*, *supra; McHenry* v. *Duffield*, 7 Bl'kf., 41; *Potts* v. *Henderson*, 2 Ind., 327; *Hill* v. *Smith*, 2 Bing., 526.

In the case at bar the Council may be regarded as claiming to be agents for the city, so far as the contract provided for paying for the improvement of street, and alley crossings from the city treasury; and as agents of the property holders along the street to the extent that the contract stipulated, that the cost of the improvement should be assessed against the lots abutting on the street. (*Beard* v. *City of Brooklyn*, 31 Barbour, 148.) But they had no authority to bind either in this case, because the territory in which the improvement was ordered, was not within the city, and therefore no jurisdiction had been conferred upon them. Members of a City Council are bound to the exercise of reasonable diligence,

Sylvester *v.* Macauley, Mayor, and Members of Common Council.

at least, to ascertain the extent of the territorial limits within which they have authority to act; and when they invite proposals for improvements, which they have no right to order, except within the city, they do thereby practically assert that they have used such diligence in ascertaining the extent of their territorial jurisdiction, and that, after due examination, they have adjudged the territory within which the proposed work is to be done, to be within the corporate limits of the city.

We think, in this case, that the plaintiff had the right to rest on the assumption that the members of the Council had so performed that duty, without prosecuting further inquiries as to the exact city boundaries. He avers that he did rely. on the representation of the defendants, and that he was thereby induced to bid for the work, and make the contract alleged.

The answer concedes that the plaintiff was in fact ignorant that this extension of Market street was outside of the city, and that he was so misled by the action of the Council in advertising for bids for making the improvement. The defendants allege like ignorance on their part, but they fail to show that they had used any diligence, or made any effort whatever, to inform themselves whether the street in question was within the geographical boundaries of the city; nor does the answer allege any excuse for their want of knowlege that the street they engaged the plaintiff to improve was outside the territory over which the City Council had jurisdiction. We hold, therefore, that the judgment at Special Term against the members of the Council who participated in the proceedings complained of, was right, and affirm the judgment as to them. But the defendant, Macauley, does not stand on the same footing with the members of the Council. He did nothing in the premises save to sign, as Mayor, the ordinance ordering the improvement. This was his duty under the statute. (*Davis*, 106;

Sylvester *v.* Macauley, Mayor, and Members of Common Council.

Sec. 78.) The mere attestation of the Mayor that the ordinance had passed the Council by the requisite number of votes worked no injury to the plaintiff, and a majority of the Court are of the opinion that the judgment as to him should be reversed.

---

NOTE.—The Common Council of a city have the right to regulate the streets, alleys and sidewalks, to improve and repair the same. In such case, there is no individual liability, either civily or criminally, unless they acted corruptly. *Baker* v. *The State*, 27 Ind., 485; *Wood* v. *Mears*, 12 Ind., 515; *City of Vincennes* v. *Richards*, 23 Ind., 381; *City of Indianapolis* v. *Imberry*, 17 Ind., 175.

The Mayor and Councilmen of the city shall constitute the Common Council. The Mayor shall be the presiding officer of the Common Council, and shall have a casting vote in all cases, when a tie, but not otherwise. *Waldo* v. *Wallace*, 12 Ind., 569.

Cities are created and endowed by the Legislature, with certain powers called Charters, and in their action, these cities must be confined within the limits that a strict construction of the grants of powers in their Charters will assign to them. 5 Ind., 38.

It may also be considered as settled that municipal corporations are responsible to the same extent and in the same manner as natural persons, for injuries occasioned by the negligence or unskilfulness of their agents in the construction of works for the benefit of the cities or towns under their government. *Ross* v. *City of Madison*, 1 Ind., 281, and authorities cited; 26 Ind., 17, and authorities cited.

The members of the Council are personally liable, if the agents of an individual would be, under the same circumstances. *Johnson* v. *The Common Council of the City of Indianapolis*, 16 Ind., 227.

A person contracting with a city, for the improvement of a street in such city, is bound to take notice of the provisions of the general law regulating such improvements; and must also ascertain whether the Common Council have so conducted the letting, as to render property holders liable for the improvement. 16 Ind., 227.

A distinction exists between the legislative powers of the Common Council and the exercise of their rights over property belonging to them. No act done by them in regard to their property, can be set up to restrain them from acting in matters which require legislation for the city interests, and no act done by them in the former capacity can deprive them of the power of passing such laws as may be deemed necessary for the public good. *Superior Court (City of Albany, N. Y.,)*, 6 Abb., 273.

Sylvester *v.* Macauley, Mayor, and Members of Common Council.

' Corporations, like individuals, may be bound by implied contracts, to be deduced from corporate acts, without either a note, writing or deed.   But in applying this rule we must be careful to not violate the rule that no act can be made valid which is without the power of the corporation, or the scope of its authority.   *New York & Harlem Railroad Co.,* v. *Mayor, &c., of New York,* 1 Hilt., 562.

Courts are bound to assume, that where a discretion is vested in a municipal body, as to exercising functions of a legislative character, good reasons existed for the adoption of a regulation or ordinance, which was the result of such a discretion.   *Same.*

The general agent of a corporation, clothed with certain powers, by the Charter, or by the lawful act of the corporation, may use those powers for an unauthorized or even a prohibited purpose in his dealings with an innocent third party, and yet the corporation may be held liable for his acts. 24 Ind., 457.

A private corporation is liable in damages to individuals for injury to their property, although no remedy for such injury is provided by the act of incorporation.   14 Conn., 153 ; 15 Conn., 312 ; 2 Johns Ch., 162 ; 9 Ind., 433.

Also liable for damages to property, by creating a nuisance under municipal authority.   20 Ind., 131.

One who acts for another, by a natural, if not a necessary implication, holds himself out as having competent authority to do the act, and he thereby draws the other party into a reciprocal engagement.   *Story on Agency,* 264.

See also 1 Ind., 281, 381 ; 26 Ind., 17 ; 29 Ind., 187 ; 25 Ind., 512 ; 6 Ind., 237 ; 14 Ind., 399 ; 16 Ind , 441 ; 30 Ind., 235, also 192 ; 17 Ind., 175, 169, 269 ; 19 Ind., 135 ; 5 Ind., 38 ; 20 Ind., 315 ; 22 Ind., 491 ; 28 Ind., 378 ; 12 Ind., 569, 515 ; 8 Ind., 54 ; 27 Ind., 485 ; 30 Ind., 192 ; 22 Ind., 491 ; 3 N. Y., 463 ; 5 N. Y., 369 ; 3 Hill, 612 ; 3 Comst, 463 ; 4 Ohio St., 80 ; 1 Seldon, 369 ; 4 Comst., 195 ; 18 Pa. St., 187 ; 20 Howard, 185.