DANIEL THOMPSON et al., Commissioner of Highways, &c., Respondents, v. SAMUEL ALLEN, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1872.)

Commissioners of highways changed the course of a sluiceway crossing and draining a highway, and turned the water upon the defendant's land. The defendant obstructed the sluice and was sued for a penalty. *Held*, that if the effect of the change was to destroy his cultivated fields, the defendant might peaceably abate the sluice in that manner as a nuisance.

The plaintiff's remedy was not confined to an action against the commissioners for improper, malicious, &c., acts, but he might prove such injuries in defence to the action.

THE plaintiffs brought an action against the defendant, in Justice's Court of Schuyler county, in March, 1871, to recover a penalty of five dollars, for filling up and obstructing a certain ditch (constructed for draining water from a highway), under section 102, art. 5, title 1, chap. 16, part 1, R. S.

On the trial it appeared that the obstruction was placed in the north end of a sluice, across the turnpike part of the highway. The sluice, as defendant offered to show on the trial, diverted the waters from their natural channel, and turned them upon the cultivated fields of the defendant on the south side of the highway, where they had caused the defendant great injury by cutting deep and broad gullies through his lands, and destroying his crops. The waters thus thrown upon the defendant's land had, pre-

vious to the construction of the sluice in question, flowed across the highway at a point several rods west of the obstructed sluice, where they ran off south-westerly through lands owned by one Ephraim Allen.

The defendant offered evidence to establish that for some time before the construction of the sluice in question, the water on the north side of the highway, on lands of one Becker, who adjoined the defendant on the west, had been conducted by an artificial channel cut on the east side of Becker's land, down to the highway, and then caused to flow west, in a ditch on the north side of the highway to the point of its natural flow south-westerly, where it crossed the turnpike through a sluiceway, at its original and natural channel, running off from Becker's land at the same point, and in precisely the same channel as it would have done had no ditch been cut on Becker's farm.

The evidence was objected to by the plaintiffs, and excluded by the justice; to which ruling the defendant duly excepted.

Judgment was given against the defendant for five dollars penalty, and costs, from which he appealed to the County Court of Schuyler county, where the judgment was affirmed.

The defendant appealed from the judgment of the County Court to the Supreme Court.

The case was submitted upon printed points.

*William J. Norton* and *Marcus Lyon*, for the appellants.

*O. P. Hurd*, for the respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

MILLER, P. J. I think that the justice, in excluding the testimony offered by the defendant to prove that the plaintiffs diverted the water from its natural course, and the effect the water had on the defendant's premises after being turned on by the plaintiffs, committed an error. If the effect of turning the water on the defendant's lands was to destroy his cultivated fields, then it created a private nuisance, which may

Thompson *v.* Allen.

be abated by the party aggrieved thereby, provided he commits no riot in doing so. (3 Black. Com., p. 5.) It is like the case of a house or wall erected so near to a party that it stops ancient lights, which is a private nuisance, and justifies the aggrieved party in entering upon his neighbor's land and peaceably pulling it away; or of a gate erected across the public highway, which is a *common nuisance*, and any one may cut down and destroy.

These cases are stated by Mr. Justice BLACKSTONE as illustrations, and the reason given for the exercise of this summary method is, because injuries of this character require an immediate remedy, and cannot wait the slow progress of the ordinary forms of justice. (Id., p. 6.) There must be some limit to the powers of commissioners of highways, and the right to injure a party by turning water upon his land, if not restricted within proper bounds, might be carried to an extent which would be utterly destructive to the property thus invaded. Suppose a large stream was thus turned, which might sweep away everything within its course, can there be any doubt that the owner of the land would be justified in diverting the water so as to save his rights? These officers have no power, judicially or otherwise, thus to infringe upon private rights. While they should be fully protected in a proper discharge of their duties, yet when they go so far as to create a nuisance on the land of another they stand in the same position as private individuals, and the injured party has a right to abate such nuisance. The testimony offered tended to show that such was the case, and, if it established a nuisance, would have been a complete defence to the action brought for the penalty.

It is no answer to say that the aggrieved party must be left to a private remedy by action, when they act improperly or maliciously, for such a course might in many cases prove utterly inadequate to redress the wrong, as by the great delay the property affected might be utterly destroyed.

Of course it should be an extreme case which would justify a party in assuming to act as his own vindicator, and while in

most cases such party should be left to the ordinary course of law, yet the offer of testimony here would make an exception to this general salutary rule.

For the error of the justice the judgment rendered by him and that of the County Court must be reversed, with costs.

Judgment reversed.