ISAAC D. SLEIGHT, RESPONDENT, *v.* THE CITY OF KINGSTON, APPELLANT.

*Municipal corporation — sewers — liability for discharge of contents of, into a ferry slip.*

The plaintiff, for more than forty years, ran a ferry across the Rondout creek from the village of Rondout to Sleightsburgh, and had the right to enter into a slip in Rondout to receive and discharge passengers. In 1867, the said village, for the necessary drainage thereof, caused a new sewer to be constructed, by which they diverted an old water-course from its former channel and discharged the same, together with surface water and sewage, just above the said slip, whereby they filled the same with sand and dirt and prevented him from entering the same.

In an action by him to recover damages therefor, *held*, that he was entitled to recover.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

This action was commenced against the village of Rondout, on

the 19th day of October, 1871, by the plaintiff, who, for more than forty years, had run a ferry-boat from the village of Rondout across the Rondout creek to Sleightsburgh, and was subsequently continued against the city of Kingston, which, in 1872, succeeded to all the rights and liabilities of said village. The action was brought to recover damages occasioned by the wrongful act of the defendant in constructing a sewer, by which an ancient water-course was diverted from its former channel and discharged, together with surface water and drainage, just above a ferry slip which the plaintiff was entitled to enter to receive and discharge passengers, whereby the same was filled up and obstructed by sand and dirt.

*S. L. Stebbins*, for the appellant.

*M. Schoonmaker*, for the respondent.

BOCKES, J.:

That the plaintiff had the right to use the slip or landing-place described in the complaint for the purposes of his ferry cannot be denied, and it is also indisputable that he was in such use at the time and times his right was interfered with and injuriously affected by the opening of the new sewer. The learned judge before whom the case was tried finds, upon sufficient evidence, that a great quantity of dirt, sand and gravel was carried down in the new sewer just above the plaintiff's slip, and, by the natural action of the water thereon, created a bar or obstruction across its entrance, which hindered and prevented him at times from entering it with his ferry boat for the reception and discharge of freight and passengers according to his custom. His right to ferry at this place was sufficiently proved. He was in the actual and undisputed exercise of such right, and had so exercised it uninterruptedly for a great number of years. The fact that the stream crossed by his ferry was a public highway raised no presumption against his right to ferry, for he was entitled to use this highway in common with all others for all public and lawful purposes. He might run his boat on the stream, and, with the privilege to land, his right to ferry became complete, on compliance, of course, with the law as to license. Actual occupation of the banks of the stream raised a presumption

of right to use them for the purpose of the ferry. No attempt was made on the trial to overcome this presumption. But superadded to such presumption of right, the plaintiff established his title to the slip alleged to have been injuriously affected by the defendant's acts by positive grant. The plaintiff's right to maintain his ferry, and to make landings at the point in controversy, seem well established.

The question then is, whether the defendant unlawfully interfered with the plaintiff's property and rights.

There was, as it seems, a diversion of the water from its natural current into and through the new sewer; and there was also a collection of the surface water to some extent, which was turned into it and somewhat increased the volume of its discharge. The waters so gathered were conducted through the sewer and discharged into the creek at a point just above, and in close proximity to, the plaintiff's slip. Those waters carried down with them great quantities of dirt, sand and gravel, which, from natural causes, were deposited at and across the entrance to the slip, to an extent which at times prevented the plaintiff from entering with his ferry boat to receive and land passengers and freight. Thus were his rights impaired by a serious interruption of his business.

The city authorities, in the exercise of municipal power could not divert from its natural channel and turn a stream of water upon the plaintiff's land with impunity. (*Bradt* v. *City of Albany*, 12 N. Y. Sup. Ct. Rep. [5 Hun], 592 ; *Thompson* v. *Allen*, 7 Lans., 459 ; *Byrnes* v. *City of Cohoes*, 12 N. Y., Sup. Ct. Rep. [5 Hun], 602.) In the last case cited, it was laid down that although public officers should be fully protected in the proper discharge of their duties, yet when they go so far as to create a nuisance on the land of another, they stand in the same position as private individuals, and it was there further said that if the effect of turning the water on another's lands, was to destroy his cultivated fields, then it created a private nuisance.

The same rule of liability would obtain in case surface water arising from rains and snows, was collected into a single channel and cast in large volume upon the premises of another. (*Bastable* v. *City of Syracuse*, 15 N. Y., Sup. Ct. Rep. [8 Hun], 587.) The law applicable to misfeasance and non-feasance of municipal corpo-

rations and to public officers who may exercise both judicial and ministerial powers, was well considered in this case, and need not be here further considered. (See *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y., 463; *Conrad* v. *Village of Ithaca*, 16 id., 158; *Richardson* v. *City of Boston*, 19 How. [U. S.], Rep., 263; *Barton* v. *City of Syracuse*, 37 Barb., 292; in Ct. of App., 36 N. Y., 54.) In the case in 3 Comstock, it was said, in substance, that it was the duty of a municipal corporation to construct its sewers so that they should not become nuisances; and in *West* v. *Village of Brockport* (16 N. Y., 161, note) the same doctrine is fully enunciated. So, too, Judge GRIER says, in *Richardson* v. *City of Boston* (*supra*), that it may be the duty of the city to make drains along or under the streets, but they cannot be so constructed as to create nuisances to the adjoining owners. Within the authorities cited, and there are others of the same import, the learned judge was well authorized to hold the defendant liable on the facts found in this case.

We are of the opinion that the record discloses no error of which the defendant can justly complain. Judgment affirmed, with costs.

LEARNED, P. J., concurred; BOARDMAN, J., taking no part.

Judgment affirmed, with costs.