The Mayor and Common Council of Michigan City *v.* Roberts and Another.

———•———

The Mayor and Common Council of Michigan City *v.* Roberts and Another.

Mandate.— *Official Discretion.—City.—Common Council.—Street Improvement.*—The courts cannot, upon a proceeding by mandate, review the decision of the common council of a city incorporated under the general law of 1867 for the incorporation of cities, refusing to cause an improvement of a street to be made and paid for out of the general funds in the treasury of the city, and compel the council to cause the improvement to be made and so paid for against their judgment as to its expediency.

The Mayor and Common Council of Michigan City *v.* Roberts and Another.

APPEAL from the Laporte Circuit Court.

DOWNEY, J.—The appellees filed their verified petition in the circuit court, stating that the appellee Roberts was the owner in fee simple of lot number eight, block number eight, and the west half of lot number three in said block, in Elston's survey, all fronting and bordering on Washington and Michigan streets, in Michigan City; that the appellee Joseph Oliver was the owner in fee simple of the south-west quarter of lot number seven in said block number eight, fronting on Michigan street, in said city; that in the year 1852, the common council of said city passed ordinances requiring the grading and opening of Washington, Second, and Michigan streets in said city, and for that purpose the property along the line of said improvement was taxed; that in pursuance of such ordinances, the street commissioner caused the improvement to be made, and the property affected thereby was taxed to pay for the same; that the common council has by law the exclusive jurisdiction of streets and alleys, and was bound by law to keep them open for the use and convenience of property owners along said streets, but that said city had failed, neglected, and refused to do so; that said streets are, and for more than one year have been, entirely filled up along the property described as aforesaid, and out of repair, and thence northwardly and westwardly to their termination, so that passage to and from them is impossible; that by reason of the foregoing, their property is of no value to them or to any other person; that they are informed and believe that they have a right to have said streets opened so that they can enjoy their property, and that it is the duty of the city authorities to cause it to be done; that they requested the common council of said city to open and grade said streets, in a paper, a copy of which is filed with the petition, which they refused to do, although they have the means with which it could be done; that they are resident tax payers of the said city; and that the city is organized under the general laws for the incorporation of cities in this State, by which the city is compelled to keep its streets open

for the use of the public, as well as the property holders along the streets. They annex copies of the ordinances by authority of which the said streets were opened and improved in 1852, and pray for an alternative mandate against the appellants to show cause why a premptory mandate shall not issue commanding them to cause said streets to be opened, and for general relief. The copies of the ordinances passed in 1852 show that Michigan street was ordered to be improved by cutting eighty feet wide at the base, and the slope to be one foot and a half to one foot of rise, the filling to be the entire width of the street; and that the improvement of Washington street was to be made by cutting forty feet wide at the base and sloping as the other, the filling to be the full width of the street. Persons were appointed in each case to view the real estate to be affected and assess the benefits and also the damages. It is shown by a subsequent order of the council that part of the cost of the improvements was paid out of the general fund, and the residue from the fund arising from the assessments.

The notice, or demand, which it is alleged was served on the city council, a copy of which is filed with the complaint, is addressed to the mayor and council, and requires them to take notice that the persons who sign it are resident tax payers in the city; that they own property on Spring, Washington, Wabash, Second, and Michigan streets, in that city, consisting of various lots on said streets; that theretofore the city authorities had permitted sand to accumulate in said streets to so great an extent that the sand had been precipitated upon the lots owned by them; that their property has been and is comparatively useless; that they have suffered great damage in consequence of the city authorities permitting the sand to accumulate in the streets aforesaid. Concluding, they say, "we hereby demand and request your honorable body to take immediate steps to remove the sand in said streets, without levying a special tax upon the property for that purpose."

Upon this petition an alternative mandate was ordered by

the court; at the return of which, the appellants appeared and moved the court to quash the writ, which motion was overruled, and an exception was taken.

In the amended and final return of the appellants to the alternative writ, they say that when said parts of said streets were opened as alleged, the city was incorporated under the special charter which had theretofore been granted by the legislature, but the city is now acting under the general law for the incorporation of cities which was passed in 1867, and has no power except such as is derived from said last named act; that said streets were dug and opened through a large and high sand hill situated on adjoining lands and lots in said streets, which then was and still is, at least twenty-five feet in height, and is situated near to and about eight hundred or one thousand feet only from the shore of lake Michigan; that the portions of said streets adjoining and near to said lots are very little used by the public, and if kept open and free from sand would, by reason of their vicinity to the lake and said sand hill, be but little used by, and of little use to, the public; that strong winds often prevail along the lake at that point, by which hills of loose sand are thrown up to a height of from one hundred to one hundred fifty feet, and from the same cause said sand hill through which said streets were dug was accumulated; that said last mentioned sand hill covers several acres of adjoining land and lies near to said larger sand hill before described, and that said land is owned by various individual proprietors; that said sand hill is composed of clear, naked, loose sand which is constantly subject to slide and to be blown about by the winds, and is constantly sliding and being blown into said parts of said streets, and has caused accumulations therein; that such constantly accruing accumulations cannot be prevented otherwise than by the removal of said sand hill, or by erecting along said streets high and expensive barriers against such accumulations, or by building a roof over said streets for their protection against the same; that the use of said parts of said streets is not necessary for others than the owners of

the lots immediately adjoining the same, and that the benefits of such improvement would inure almost exclusively to them; that such improvements would cost, according to the estimates of the city engineer, and the best judgment of the council, ten thousand dollars; that there are many other streets in the city which are in constant use by the public that require repairs, and that such repairs and the other reasonable and necessary expenses of the city made it necessary during the last year to assess a tax of one per cent., and will constantly require, in the opinion of the council, an assessment of from one-half to one per cent. on all the property in the city; that in 1852, when said improvements were made, two railroads were being constructed and put into operation to the city, and it was then believed by most of the inhabitants that that would add greatly to the value of real estate in the city and cause a large increase of population, but this was a mistake; that real estate soon declined and continued to decline, until it became almost worthless, and so continued until within two or three years past, since which time it has again somewhat advanced in value; that the population of the city does not exceed forty-five hundred, and in the best exercise of their discretion as guardians of the interests of said city they deemed it unwise and inexpedient, and not within the reasonable pecuniary ability of said city at that time to make such improvement; that the assessed value for taxation of all the property in the city was less than one million of dollars; that when said streets were ordered to be opened in 1852, there was only a little sand in them, but by reason of the bushes and other vegetation which formerly grew on said sand hill having been destroyed, the hill is being constantly pressed forward into said streets, and the sand is accumulating there to a great extent, so that the streets cannot, in their judgment, be now permanently opened except by use of the means above mentioned. This return was sworn to by the mayor of the city.

The appellees demurred to the return. Their demurrer was overruled, and they filed a reply, in which they deny

the allegations of the return, and for further reply say, that in the year 1852, the streets were opened as stated in the petition, and that for sixteen years the appellants had negligently permitted the accumulation of said sand, and made no effort to keep them open, or in a passable condition; that their opening would be of public utility, inasmuch as there is but one street that could be used to get to and from the harbor in that city at that time; that the city then owned fourteen lots on Washington street, which were of no value on account of the obstructions in the streets, but if the streets were opened would be worth ten thousand dollars; that the obstructions are a great damage and detriment to the general interests of the city, and unless removed in a few years, Franklin street, the main business street of the city, will be filled up and rendered useless; that further accumulation can be prevented at a cost of one thousand dollars, if the defendants would take action in the premises; that during the last five years, the citizens, in conjunction with the general government, have commenced the improvement of the harbor at that city, and by the close of that season, a deep, safe, and capacious harbor would be completed, adding largely to the value of the property, &c.; that Washington street leads more directly to the harbor than any other street, and would be more convenient to the harbor than any other street, if worked as in 1852.

Upon this issue there was a trial by the court, a finding for the plaintiffs, that the allegations of the petition were true, and that they were entitled to a premptory mandate and fifty dollars damages.

A motion for a new trial was made, which was overruled; a bill of exceptions was filed containing the evidence; and judgment was rendered according to the finding.

It is assigned for error, first, that the circuit court erred in overruling the motion of appellants to quash the alternate writ of mandate; second, that the court erred in overruling the motion of appellants for a new trial; third, that the court erred in awarding the peremptory mandate.

The Mayor and Common Council of Michigan City *v*. Roberts and Another.

It is not very material whether we consider the case on the motion to quash the writ, or on the motion for a new trial. · The question in substance is the same. It is not questioned, nor can there be any doubt as to the jurisdiction and power of the circuit court to award the writ against a municipal corporation such as the appellants. It is expressly provided, that the writ may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins; or a duty resulting from an office, trust, or station. 2 G. & H. 322, sec. 739; *Chapin* v. *Osborn*, 29 Ind. 99.

It is provided in the act relating to the incorporation of cities, that the common council shall have exclusive power over the streets, highways, alleys, and bridges, within such city, and may prescribe the height and manner of construction of all such bridges, and to lay out, survey, and open new streets and alleys, and straighten, widen, and otherwise alter those already laid out, and to make repairs thereto, and to construct crossings, &c. 3 Stat. Ind. 94, sec. 61.

It is not alleged that the city council were applied to, to order the improvement and have the cost of it assessed against the property benefitted thereby, and that they refused to do so; but, on the contrary, it is shown by the written demand served on them that they were required to make the improvement without levying a special tax upon the property for that purpose. Neither is it alleged that the council refused to take the subject into consideration and decide upon the propriety or impropriety of doing the work. The mayor of the city testified that they had had the question before the council, and had come to the conclusion that it was not judicious to undertake, at that time, the opening of the streets in question.

The point on which the case must turn, as we think, is, could the circuit court, by mandate, review the action of the city council, and compel them to cause the improvement to be made against their judgment as to its expediency?

We have examined the authorities cited by the appellees

in support of the affirmative of this proposition. Some of them relate to the rights of the adjoining lot owners in the streets. Some have reference to the liability of corporations for injuries resulting to persons or property from the streets being allowed to be out of repair. But none of them come. up to the question in hand. The case of *The Borough of Uniontown* v. *The Commonwealth*, 34 Penn. St. 293, is nearest in point. But it does not appear by what law the officers of the borough were governed, or whether it was peremptory in its requirements, or left the matter in their discretion.

To sustain the proceeding by mandate, the act which it is sought to enforce, in the language of our statute, must be one which the law specially enjoins. Can it be said that the law specially enjoins an act, of the expediency of which the individual, corporation, or tribunal must judge? Municipal corporations possess, to some extent, sovereign powers; and some of those powers are to pass ordinances, some judicial, and some ministerial. *Brinkmeyer* v. *The City of Evansville*, 29 Ind. 187; *Stackhouse* v. *The City of Lafayette*, 26 Ind. 17.

In *Wilson* v. *The Mayor, &c., of New York*, 1 Denio, 595, it is said, on this subject, " The power of the defendants to make sewers and drains is clear, but it not their duty to make every sewer or drain which may be desired by individuals, or which a jury might even find to be necessary and proper. No imperative duty rests upon the defendants to open any new drain whatever. They have a discretion on the subject, and must necessarily decide when and where such work shall be made. If this were not so, this court by writ of mandate might compel the making of new sewers, drains, and vaults, the opening of new streets, and the paving of old ones; and the same power, when applied to the county, would require us to supervise the discretion of commissioners of highways, and in like manner coerce the opening of new roads, and the closing of old ones, not in conformity with the views of the local officers, but as we should judge best calculated to promote the public interests. This is stated by way of illustration; for a mandamus will not lie to control the discretion

The Mayor and Common Council of Michigan City v. Roberts and Another.

of any tribunal or officer, nor is such tribunal or officer answerable in any form of action, for the manner in which any duty of a judicial or discretionary nature shall have been performed. Granting therefore that a drain should have been made as the plaintiff claims, and even that the defendants wilfully, and in violation of their duty, refused to make one, of which, however, there is not a scintilla of proof, still no action lies for such neglect or violation of duty. As well might commissioners of highways be sued for refusing to lay out a new road on petition, or assessors for placing property at too high a valuation in the assessment roll. In these and innumerable other instances, the officer is to exercise his best judgment and discretion, and although he may be punished, if he act corruptly, he is under no circumstances responsible, civilly, for the execution of the trust reposed in him."

The rule to be gathered from all the cases decided in the Supreme Court of the United States, governing mandamus to the officers of the government, seems to be this: It cannot issue in a case where discretion and judgment are to be exercised by the officer, nor to control him in the manner of conducting the general duties of his office; it can be granted only where the act required to be done is imposed by law, is merely ministerial, and the relator without any other adequate remedy. Moses Mandamus, 78.

We are not referred to any decision of this court on this precise point.

We think the question whether an improvement in the streets of a city shall or shall not be made, and paid for out of the general fund in the treasury of the city, is one with reference to which the judgment of the council cannot be reviewed and set aside by the courts on a proceeding by mandate. Whether such a work shall be undertaken or not, is a question depending upon many circumstances, as for instance the state of the treasury, the condition of other thoroughfares, the necessity and utility of the work itself, &c. If the public convenience or private rights require the work to be

done, and the council improperly refuse to do it, let the citizens place the powers of government in other hands. We think the proceeding cannot be maintained, and that the motion to quash the writ should have been sustained.

Judgment reversed, and cause remanded, with instructions to the circuit court to sustain the motion to quash the writ. Costs to appellants.

*J. B. Niles*, *W. Niles*, and *M. K. Farrand*, for appellants.
*J. A. Thornton* and *J. B. Belford*, for appellees.