## GROESCH *v.* THE STATE.

STATUTES.—*Validity.*—An act of the legislature, duly passed and approved by the Governor, is not to be declared invalid, unless it be clearly, palpably, and plainly in conflict with the constitution.

CONSTITUTIONAL LAW.—LIQUOR LAW.—The act of February 27th, 1873, to regulate the sale of intoxicating liquors (Acts 1873, p. 151), does not violate the provisions of section one of article four of the constitution, by committing legislative power to the people.

SAME.—Neither does said act violate the provisions of the constitution by vesting administrative power in the people.

SAME.—Nor does it violate the provisions of the constitution prohibiting the enactment of laws local in their nature.

SAME.—*Uniform Operation of Laws.*—The constitution does not require that the operation of laws throughout the State shall be uniform, in any other sense than that their operation shall be the same in all parts of the State, under the same circumstances and conditions.

APPEAL from the Marion Criminal Court.

DOWNEY, J.—This is an indictment against the appellant, in which he is charged with selling intoxicating liquor, and suffering the same to be drunk in the building and upon the premises where the same was sold, without a permit, in violation of the act of February 27th, 1873, entitled " an act to regulate the sale of intoxicating liquors, to provide against evils resulting from any sale thereof, to furnish remedies for damages suffered by any person in consequence of such sale, prescribing penalties, to repeal all laws contravening the provisions of this act, and declaring an emergency." Acts 1873, p. 151, *et seq.*

The defendant moved the court to quash the indictment, and his motion was overruled. He then upon arraignment pleaded not guilty, and the issue having been tried by the court, without a jury, he was found guilty, and a fine of ten dollars assessed against him. Motions made by him for a new trial, and in arrest of judgment, were overruled, and final judgment was rendered againt him. Exceptions were duly taken by him to the several rulings of the court, and he has here assigned these rulings as errors. The avowed object

of the appeal is to obtain the judgment of this court upon the constitutionality of the act on which the indictment is founded. It is not denied by counsel for the appellant that the facts alleged in the indictment were fully proved by the evidence on the trial of the cause, and counsel for the State concede that the record is such as fairly presents to this court the questions, a decision of which is desired. The questions involved have been argued, both orally and in printed briefs, by the distinguished counsel engaged in the cause. The objections made by counsel for the appellant do not extend to the whole act, but are confined to certain features or parts of it. In the language of their brief, "the only portions of the act that are necessarily brought to the attention of the court by this record are those prohibiting such sales without a permit and those relating to the granting of permits."

Having bestowed upon the questions presented the consideration which their magnitude and importance demand, we proceed to state our conclusions with some of the reasons which have led us to such conclusions.

The law in question is, in many essential particulars, very different from any other law on the subject, which has heretofore been in force in the State. It contains many important provisions which have not before been found in any law in this State on that subject. For this reason, and in order that our decision and the law may be found together, we will state a little more fully than we otherwise would do, the provisions of the act. It will thus more readily be seen what features or parts of the act have been passed upon by this decision and what have not been considered. The first section of the act provides, "that it shall be unlawful for any person or persons, by himself or agent, to sell, barter, or give away for any purpose of gain, to any person whomsoever, any intoxicating liquors to be drunk in, upon, or about the building or premises where the liquor is sold, bartered, or given away, or in any room, building, or premises adjoining to or connected with the place where the liquor

is sold, bartered, or given away for the purpose of gain, until such person or persons shall have obtained a permit therefor from the board of commissioners of the county where he resides, as hereinafter provided."

The second section requires that "any person desiring a permit to sell intoxicating liquors to be drunk on the premises, shall file in the office of the auditor of the proper county, not less than twenty days before the first day of the term of any regular session of the board of commissioners of such county, a petition in writing, stating therein the building or number, street, ward or township wherein the permission is asked to be granted, praying for such permit, and certifying that the applicant is a resident voter of such county, and a citizen of the State of Indiana, and that he is a proper person to have and receive such permit; which petition shall be signed by the applicant, and also by a majority of the legal voters resident in the ward, if it be in a city or town, if it be an incorporated town, or township wherein the applicant proposes to sell intoxicating liquors; such petition shall be kept on file by the auditor until the next ensuing regular session of the board of commissioners, when it shall be presented to the board for their action. The board shall examine such petition, and if satisfied the same is in proper form, and that it has been signed as hereinbefore required, shall direct a permit to be issued under the hand and seal of said auditor, and delivered to the person named in such permit, upon his complying with the provisions of this act and paying the costs of filing and recording said petition and costs of issuing said permit."

By the third section it is required that "before the granting of a permit by the board of commissioners, the applicant shall cause to be executed and properly acknowledged before an officer authorized to take acknowledgment of deeds, a bond payable to the State of Indiana, in the sum of three thousand dollars, with good freehold security thereon of not less than two persons, to be approved by the board of commissioners, and conditioned for the payment of any

and all fines, penalties and forfeitures incurred by reason of the violation of any of the provisions of this act, and conditioned further, that the principal and sureties therein named shall be jointly and severally liable, and shall pay to any person or persons, any and all·damages which shall in any manner be suffered by or inflicted upon any such person or persons, either in person or property, or means of support, by reason of any sale or ̍sales of intoxicating liquors to any person, by the person receiving such permit or by any of his agents or employees. Separate suits may be brought on said bond by the person or persons injured, but the aggregate amount recovered thereon shall not exceed the said sum of three thousand dollars, and in case the amount of said bond shall be exhausted by recoveries thereon, a new bond in the same penalty and with like sureties shall be filed within ten days; and in default thereof said permit shall be deemed to be revoked. Such bond, after its approval by the board of commissioners, shall be filed in the office of the auditor of the county, and shall be recorded by such auditor forthwith in a book prepared for that purpose, and shall there remain for the use of the State of Indiana, and for the use of any person or persons suffering any damage as hereinbefore set forth. Such bond may be sued and recovered upon in any court having civil jurisdiction in the county (except justices' courts) by or for the use of any person or persons, or their legal representatives, who may be injured or damaged by reason of any sale or sales of intoxicating liquors by the person receiving the permit or by any of his agents or employees. The record of the bond or a copy thereof, duly certified by such auditor, shall be admissible in evidence in any suit on such bond, and shall have the same force and effect as the original bond would have if offered in evidence."

The fourth section declares, that "the whole number of votes cast for candidates for Congress at the last preceding congressional election in the township, and the whole number of votes cast for councilman or trustee in any ward or town, at the last

preceding municipal election in any city or town in which the applicant for permit desires to sell said intoxicating liquors, shall be deemed to be the whole number of legal voters of such ward, town or township, a majority of whose names shall be signed to the petition of such applicant;" and this section also provides a punishment for any person not a legal voter of the ward, town, or township, who may sign such petition.

By the fifth section it is provided, that the permit shall be granted for one year; that the auditor shall furnish to the party to whom it has been granted a copy of the order, which shall show the date of the commencement and the expiration thereof. This copy is required, by this section, to be hung up in a conspicuous place in the room, where the liquors are sold, where it can be seen and read, at all times, by any person desiring to do so. This section also provides, that, should any person holding a permit be convicted of a violation of any of the provisions of the act, such conviction shall work a forfeiture of his permit, and of all rights thereunder, and that no permit shall thereafter be granted to such person, before the expiration of five years from the date of such conviction.

The sixth section denounces a penalty against any person who, by himself or agent, shall sell, barter, or give intoxicating liquors to any minor, or to any person intoxicated, or to any person who is in the habit of getting intoxicated.

All places where intoxicating liquor is sold, in violation of the act, are, by the seventh section, to be taken, held, and are declared to be common nuisances; and all rooms, taverns, eating houses, bazaars, restaurants, drug stores, groceries, coffee houses, cellars, or other places of public resort, where intoxicating liquors are sold in violation of this act, shall be shut up and abated as public nuisances, upon the conviction of the keeper thereof, who is to be punished as afterward provided in the act.

In the eighth section it is enacted that any person who shall, by the sale of intoxicating liquors, with or without a permit, cause the intoxication, in whole or in part, of any other

person, shall be liable for, and be compelled to pay, a reasonable compensation to any person who may take charge of and provide for such intoxicated person, for every day he or she is so cared for, which sum may be recovered in an action of debt before any court having competent jurisdiction.

The ninth section punishes those who are found in a state of intoxication, and requires them to give information as to the person or persons from whom the liquor, in whole or in part, was obtained, under penalty of imprisonment in the county jail.

According to the tenth section, a permit does not authorize selling on Sunday, upon the day of any state, county, township, or municipal election in the township, town, or city, where the election may be held, upon Christmas day, upon the Fourth of July, upon any Thanksgiving day, or upon any public holiday, or between the hours of nine o'clock P. M., and six o'clock, A. M.; and to sell in violation of this section is made penal.

The eleventh section declares, that "the bartering or giving away of intoxicating liquors, or other shift or device to evade the provisions of this act, by any person or persons keeping liquors for sale, or by his agent or employee, at the place where the same are kept for sale, shall be deemed and held to be an unlawful selling or giving away for the purpose of gain within the provisions of the act."

The twelfth section gives, in addition to the remedy given by section eight, to every husband, wife, child, parent, guardian, employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual, or otherwise, of any person, a right of action in his or her own name, severally or jointly against any person or persons who shall, by selling, bartering, or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person, and declares that any person or persons owning, renting, leasing, or permitting the occupation of any building or premises, and having knowledge that intoxicating

liquor is to be sold therein, or having leased the same for other purposes shall knowingly permit therein the sale of intoxicating liquor, or who, having been informed that intoxicating liquor is sold therein, that has caused, in whole or in part, the intoxication of any person, who shall not immediately, after being so informed, take legal steps in good faith to dispossess such tenant or lessee, shall be liable jointly with the person selling, bartering, or giving away intoxicating liquors as aforesaid, to any person or persons injured, for all damages, and for exemplary damages. It is provided, however, that execution on any such judgment shall first be levied on the property of the person selling, etc., such liquors. By this section a married woman has the same right to bring suit, and to control the same and the amount recovered, as a *feme sole*, and all damages recovered by a minor are to be paid to the minor or to his or her parent, guardian, or next friend, as the court may direct. The unlawful sale, etc., of liquor by a tenant works a forfeiture of all his rights under the lease or contract by which the premises are held.

This section also declares that all suits for damages under the act may be by any appropriate action in any of the courts in this State having competent jurisdiction, and declares that all judgments recovered under the provisions of the act may be enforced without any relief from valuation laws.

Section thirteen gives the right of action to the township trustee under certain circumstances.

The fourteenth section, which is the section on which the indictment in this case is founded, declares, that "for every violation of the provisions of the first and sixth sections of the act, the person so offending shall forfeit and pay a fine of not less than ten dollars nor more than fifty dollars, or be imprisoned in the jail of the county not less than ten nor more than thirty days;" and for every violation of the seventh section, a fine of not less than twenty nor more than fifty dollars, and the place so kept shall be shut up and abated as a common nuisance, by order of the court before which

the conviction is had. The fifteenth, sixteenth, eighteenth, and nineteenth sections of the act relate to proceedings under the act, and the force and effect of the judgment rendered. The seventeenth section enacts, that it shall be unlawful for any person to buy for or furnish to any person who is at the time intoxicated, or in the habit of getting intoxicated, or to buy for or furnish to any minor, to be drunk by such minor, any intoxicating liquor, and declares that any person or persons violating that section of the act shall be fined not less than five nor more than fifty dollars. The twentieth section repeals all laws and parts of laws conflicting with this act or with any of its provisions, etc. The twenty-first section of the act declares that an emergency exists for the immediate taking effect of the act, and that it shall, therefore, be in force from and after its passage, except in so far as it relates to those who hold a license under the existing laws of the State, and as to them immediately after the expiration thereof.

The question as to the constitutionality or the unconstitutionality of an act of the legislature, when presented to the court, is always regarded as one of great delicacy and importance. This results from a consideration of the deference due to the other departments of the government, and from the fact that in those cases where the question is as to the conflict of the law with the state constitution, as is the case here, the decision of the court is final. Members of the general assembly are solemnly sworn to support the constitution of the State, and it is their imperative duty to pass no law which, in any of its parts, contravenes its provisions. When an act has secured the requisite votes and has passed the two houses of the general assembly, it must undergo the scrutiny of the executive, who is equally with the legislature bound to forbid its becoming a law, if, in his opinion, it is in violation of the constitution of the State. Hence, it has always been the language of this court, that an act of the legislature, duly passed and approved by the governor, is not

to be declared invalid, unless it be clearly, palpably, and plainly in conflict with the constitution. *The Lafayette, etc., Railroad Co.* v. *Geiger,* 34 Ind. 185, and cases cited. We need not stop to refer to other authorities on this point, but we cannot resist the inclination to repeat, in this connection, the appropriate language of one whose talents and labors have been an honor to the bench of this court: "The constitution is paramount to any statute, and whenever the two are in conflict the latter must be held void. But where it is not clear that such conflict exists, the court must not undertake to annul the statute. This rule is well settled, and it is founded in unquestionable wisdom. The apprehension sometimes, though rarely, expressed, that this rule is vicious, and constantly tends towards the destruction of popular liberty, by gradually destroying the constitutional limitations of legislative power, results from a failure to comprehend the character of our forms of government, and the fundamental basis upon which they rest. The legislature is peculiarly under the control of the popular will. It is liable to be changed, at short intervals, by elections. Its errors can, therefore, be quickly cured. The courts are more remote from the reach of the people. If we by following our doubts, in the absence of clear convictions, shall abridge the just authority of the legislature, there is no remedy for six years. Thus, to whatever extent this court might err, in denying the rightful authority of the law-making department, we would chain that authority, for a long period, at our feet. It is better and safer, therefore, that the judiciary, if err it must, should not err in that direction. If either department of the government may slightly overstep the limits of its constitutional powers, it should be that one whose official life shall soonest end. It has the least motive to usurp power not given, and the people can sooner relieve themselves of its mistakes. Herein is a sufficient reason that the courts should never strike down a statute, unless its conflict with the constitution is clear. Then, too, the judiciary ought to accord to the legis-

islature as much purity of purpose as it would claim for itself, as honest a desire to obey the constitution, and, also, a high capacity to judge of its meaning. Hence, its action is entitled to a respect which should beget caution in attempting to set it aside. This, with that corresponding caution of the legislature, in the exercise of doubtful powers, which the oath of office naturally excites in conscientious men, would render the judicial sentence of nullity upon legislative action as rare a thing as it ought to be, and secure that harmonious co-operation of the two departments, and that independence of both, which are essential to good government." FRAZER, J., in *Brown* v. *Buzan,* 24 Ind. 194.

With the expediency of the law, if there is any question as to that, we have nothing to do. That is a question first for the legislator, and next for the executive. That consideration may control the vote of the former, or the veto or approval of the latter, but we can decide nothing with reference to it. Our duty is to decide whether or not there is a plain violation of the constitution by the features or portions of the act in question. From the discharge of this duty we have no disposition to shrink.

Counsel for appellant say : " The propositions that we desire to submit to the judgment of the court are these : that this act provides for a direct intervention of the people in the making and in the executing of a law; that the taking effect of the act is ·made to depend upon popular choice ; that it is local and special, when it should be general and uniform in operation ; and that it therefore violates all those several provisions of the constitution, in which the organic ideas upon these subjects are embodied." The first question to be decided is this, does the act in question commit legislative power to the people? It is urged by counsel for the appellant that it does, and that it is therefore in violation of section one of article four of the constitution, which provides, that the legislative authority of the State shall be vested in the general assembly, which shall consist of a sen-

ate and house of representatives. It is quite clear, we think, as a legal proposition, that the legislative authority is incapable of delegation; that it cannot be conferred by the legislature upon any other body, or upon any person or persons, is a proposition not questioned. *Barto* v. *Himrod,* 4 Seld. 483; *Parker* v. *Commonwealth,* 6 Pa. St. 507; *Thorne* v. *Cramer,* 15 Barb. 112; *Bradley* v. *Baxter,* 15 Barb. 122; *Rice Foster,* 4 Harring. Del. 479; *Geebrick* v. *The State,* 5 Iowa, 491; *The State* v. *Weir,* 33 Iowa, 134. Yet it would, perhaps, not be seriously disputed that the legislature may confer, and in fact has conferred, an authority, which if not legislative much resembles legislative authority, upon municipal corporations, for purposes of local self-government. *The People* v. *Collins,* 3 Mich. 343; 1 G. & H. 223, sec. 35; *Brinkmeyer* v. *The City of Evansville,* 29 Ind. 187; *The Mayor, etc.,* v. *Roberts,* 34 Ind. 471. The material question here is, does the act in question confer upon the people or a portion of the people legislative authority? The ground taken is, that the law is not in force in any township, town, or ward of a city, until the requisite number of voters have signed a petition, and that it is the act of such voters in signing the petition which makes the law. In our judgment, this position is untenable. We cannot regard the act as conferring upon the petitioners legislative authority in any sense of these terms. It might as well be said that the law which authorizes the laying out of a public highway by authority of the county commissioners, upon the petition of a designated number of persons, was unconstitutional, because it conferred upon such petitioners legislative authority. Had the question been submitted to the people to determine, by vote or by petition, whether the law should take effect or not, or the time when it should take effect, as in some of the cases to which we have referred, there would have been some ground for the objection. But here the law was enacted in the usual form of enacting laws, and it is declared by the legislature that it shall be in force from and after its passage, etc. The petition of an applicant for a permit, aided by his co-petition-

ers, so far from being an exercise of legislative authority, really assumes that the law has been enacted and is already in force, or otherwise there would be no authority for such application and petition. The case of *Maize* v. *The State*, 4 Ind. 342, is cited as an authority in support of all the objections urged against this law. We do not so regard it. In our opinion, the act, the constitutionality of which was in question in that case, was so different from the act now in question, that that case is not an authority upon any point in this case. Therefore, while we need not approve the decision in that case, it is not necessary that we should over-rule it in deciding this case. It may be remarked, however, that there are several cases, and among them *Clarke* v. *The City of Rochester*, 24 Barb. 446, and 28 N. Y. 605, the case in the Supreme Court of Pennsylvania of *Loch*, Chicago Legal News, vol. 5, p. 372, *Bancroft* v. *Dumas* 21 Vt. 456, and the more recent case of *The State, ex rel. Sanford*, v. *The Morris Common Pleas*, in the Supreme Court of New Jersey, 12 Am. Law Reg. 32, where legislation similar to the statute of 1853, which was in question in the Maize case, has been held to be constitutional and valid. Under the law in question in the Maize case, the voters in each township determined the question whether any licenses should be granted or not, by a vote, once in each year. When the vote was in favor of license, any one could obtain a license by filing a bond with security as required by the act. If the vote was against license, no one could obtain a license during the year. The question as to the qualifications or fitness of the applicant to be intrusted with a license did not enter into consideration in any view of the case.

Under the present law, however, the vote at a preceding election is assumed as fixing the number of voters, without any reference to the fact that all the voters never vote at the same election, and a number equal to a majority of that number must petition for the granting of each permit. Thus the qualifications and fitness of each person, as well as the wish of the petitioners for the establishment of the busi-

ness in their neighborhood, are at once settled by the voice of those who are most intimately concerned. If they do not thus open the door to the traffic, the law provides that, so far as that applicant is concerned, it shall remain closed. This is a species of self-government which by the law is placed in the hands of the people to be exercised by a majority of them according as they may judge to be for their best interest. It is believed that the privilege of retailing intoxicating liquors has never, under any law which has ever been enacted in the State, been granted unconditionally. That the applicant should comply with certain conditions, such as the presentation of a petition signed by a designated number of persons, make proof of his fitness to have a license, or execute a bond, etc., has been a feature of every law which has ever been in force in this State. To comply with such condition has not been heretofore supposed to be an exercise of legislative authority.

The next objection to the act is, that it vests administrative power in the people. This position is in conflict with the preceding, for the same act can not be legislative and at the same time administrative in its character, nor can any person charged with official duties of the one class exercise any of the duties of a person of the other class, except as expressly provided in the constitution. The administrative is included in the executive department of the government. Art. 3, sec. 1. Looking at the sixth article of the constitution, which relates to administrative officers and their functions, we find that it embraces the secretary, auditor, and treasurer of State, and certain county and township officers. It also provides the term during which such officers shall hold, their place of residence, etc. The last section states that the general assembly may confer upon the board doing county business in the several counties powers of a local administrative character. We are unable to see any ground upon which it can be maintained that the act by which the petitioners, who recommend the applicant and ask that a permit may be granted to him, can be regarded as an admin-

istrative act. So far as the board of commissioners of the county is authorized by the act to hear and decide the questions which may arise upon the presentation of the petition, there can be no question, we think, as to their power to do so, since the constitution expressly authorizes the legislature to confer such powers upon them.

The third and last objection to the act is, that it is local and not general in its operation. This objection goes to the form and quality of the law, irrespective of the manner of its enactment. The following provisions of the constitution are cited as those which are violated by this law: the portion of sec. twenty-two of article four which reads as follows: "The general assembly shall not pass local or special laws, in any of the following enumerated cases; that is to say, * * * for the punishment of crimes and misdemeanors;" also section twenty-three of the same article, which reads as follows: "In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." Is the act in question, or the parts or features thereof which are in question, general and of uniform operation throughout the State? We think the act is general. It is in force and operation in all parts of the State. It is only in a qualified sense that any law can be said to be of uniform operation throughout the State. A law for the punishment of crime, the provisions of which are alike applicable to all parts of the State, must necessarily lack uniformity in one sense in its operation, not only as to persons but also as to localities. It operates in those places where its provisions are violated and upon those persons who transgress them. Under the same circumstance and conditions its operation is uniform. The law which affords civil remedies is uniform in its provisions, and under the like circumstances is uniform in its operation throughout the State. It is not required that every man shall resort to that remedy, or that in each locality there shall be the same number or any number of persons who

shall resort to the remedy, in order to make the law uniform in its·operation in the sense in which the terms are used in the constitution. Such is the case under all circumstances when one or more persons are by law required to do some act or acts, upon or in consequence of which the law is to operate. *Smith* v. *Doggett,* 14 Ind. 442. It cannot be held that the framers of the constitution intended that the operation of laws throughout the State should be uniform in any other sense than that their operation should be the same in all parts of the State under the same circumstances and conditions. In the case of *Maize* v. *The State, supra,* the court having come to the conclusion that it was the vote of· the people which made the law, and seeing that in one township the vote would be for license, and in another it would be against license, very naturally, whether rightfully or not, came to the conclusion that the law would thus be in force in some townships and not in others, and therefore local and special in its character and in violation of the constitution. That state of things can never exist under the present law. It is true that if no man will apply for a permit in any township, town, or ward, or if some one is disposed to apply and he cannot command the necessary number of vouchers to sign his petition, there can be no shop in that locality, while at the same time there may be in an adjoining township, town, or ward one or many of such establishments. So, too, there may be what some may regard as a want of uniformity in the same township, town, or ward. A. may, on account of his supposed superior fitness for the business, the· location of his place of business,.or for some other reason,, readily obtain the required indorsement, while B., C., and D., for the lack of the supposed qualifications, advantage· of location, or other reasons, may be wholly unable to comply with the act in this respect. One ·man may be able· to give the bond and securities required by the act, while another or others may be wholly unable to do so. Does this destroy the uniformity of operation of the act in either·

of the cases supposed? We think it does not. It would not be difficult to refer to statutes which in principle can not be readily distinguished from the law in question in this case. Many of them are mentioned in the brief of counsel for the appellee. But we will not extend this opinion by a reference to them. In our opinion, the law is not justly liable to any of the objections urged against it.

The judgment is affirmed, with costs.

*J. E. McDonald, J. M. Butler, O. B. Hord,* and *A. W. Hendricks,* for appellant.

*J. W. Gordon, A. G. Porter,* and *J. C. Denny,* Attorney General, for the State.