Burnet v. The Trustees of the Wabash and Erie Canal.

BURNET v. THE TRUSTEES OF THE WABASH AND ERIE CANAL.

WABASH AND ERIE CANAL.—*Canal Lands.*—*Mandate.*—An action against the trustees of the Wabash and Erie Canal, to compel them to accept the plaintiff as a purchaser of certain lands granted by the United States to the State of Indiana for the completion of the canal, if sustained at all, must be on the ground that it is a proceeding in the nature of a mandate to compel the trustees to perform an official duty.

SAME.—Such land cannot be sold or conveyed, unless the contract of sale or conveyance be concurred in and signed by the trustees on the part of the State.

MANDATE.—Official discretion cannot be controlled by mandate.

From the Clay Circuit Court.

*M. C. Hunter* and *S. Claypool,* for appellant.

*D. E. Williamson* and *A. Daggy,* for appellees.

DOWNEY, J.—Complaint by the appellant against the appellees, alleging that the defendants under and by virtue of a deed or patent, dated July 31st, 1847, made to them by the Governor of the State of Indiana, as provided by the act entitled, " an act to provide for the funded debt of the State

of Indiana, and for the completion of the Wabash and Erie Canal to Evansville," approved January 19th, 1846, and the act supplemental thereto, approved January 27th, 1847, by which said trustees are created a corporation, became the owners in fee simple and possessed, as therein provided, among other, of certain real estate, which is particularly described in the complaint, in Clay county, Indiana, the said lands having been ceded by the United States to the State of Indiana, by an act of Congress entitled, "an act to grant certain lands to the State of Indiana the better to enable said State to extend and complete the Wabash and Erie Canal from Terre Haute to the Ohio river," approved March 3d, 1845 ; that under and by virtue of said act of the General Assembly, approved January 19th, 1846, said lands included in said deed or patent of said governor were, by said defendants, to be classified, under the direction and supervision of the governor, into three classes, taking into view quality and location ; and the lands of the first class were at all times to be subject to sale at a price not exceeding two dollars and fifty cents per acre; the lands of the second class were at all times to be subject to sale at a price not exceeding two dollars per acre; and the lands of the third class were at all times to be subject to sale at a price not exceeding one dollar and twenty-five cents per acre; but none of said lands were to be sold at a price less than is provided in the act of Congress donating the lands.

It is then alleged that the defendants, in pursuance of said act of the General Assembly, did, on the 6th day of December, 1847, report to the General Assembly of the State of Indiana a tabular statement, exhibiting the number of acres of land which they held, under and by virtue of said deed or patent from said governor, in the Vincennes land district in said State, the counties in which they were situated, and the classification of them, as above required by said law ; that said classification showed at that time that they had in Clay county, Indiana, thirty-six thousand six hundred and twelve and sixty-three hundredths acres ; that there were in the first class twenty-five thousand five hundred and forty-two and fifty-six

hundredths acres, in the second class ten thousand six hundred and seventy-six and sixty-five hundredths acres, and in the third class three hundred and ninety-two and forty-two hundredths acres; that the lands described were embraced within said classification, but as said classification reported to the General Assembly, as aforesaid, does not show what particular lands were embraced in each class, and as that particular classification is in the possession of the defendants, and not in the possession of complainant, he cannot give the court a copy of the lands in Clay county embraced in each classification as aforesaid, and cannot therefore show to the court in which class said lands above described are and were embraced, and at what price they were to be sold per acre.

It is then stated that said defendants were required by said last named act to establish at least one land-office for the sale of said canal lands, owned by them as aforesaid, at some convenient point in said State, and for the transaction of all business connected with their said trust; that after said classification of said lands as aforesaid, said defendants, for the use of their said canal, constructed two reservoirs, one known as Splunge creek reservoir, in which were embraced part of said lands which are particularly designated in the complaint, and the other known as Birch creek reservoir, in which were embraced the residue of said lands particularly described in the complaint.

It is then averred that the defendants fully completed said canal, but were afterward perpetually enjoined by the United States Circuit Court for Indiana, at the suit of the bondholders, from using any part of the proceeds of the sale of said lands, conveyed by the governor as aforesaid, for keeping up the repairs of said canal, and by reason of the tolls and other revenues arising from said canal being insufficient to keep up repairs and maintain said canal, the trustees were compelled to and did abandon all of said canal between Terre Haute and Evansville, and for want of needful repairs the same has gone into decay, and has become completely destroyed, and it is now

impossible to repair and maintain said canal with the means at the command of defendants.

It is further alleged that said canal and said reservoirs, as feeders thereto, have not been used by said defendants from Terre Haute to Evansville, in said State, since the year 1862, but the same have been wholly abandoned by them, and the locks, dams, feeders, reservoirs, and embankments of said canal have been entirely destroyed, and a part of the lands in said Splunge creek reservoir, since its abandonment, as afore-said, have been selected and sold by the State of Indiana as swamp lands, under and by virtue of an act of Congress, approved September 28th, 1850, granting certain lands to said State, known as swamp lands ; and most of the residue of said lands in said reservoir, with the knowledge of said defendants, are now, and since its abandonment have been, cultivated in corn and other grain ; that south of Terre Haute, and particularly through the lands in question, no location of the precise line of said canal had been made, and the right of way therefor had not been obtained, and no work thereon had been done prior to the passage of said act of the 19th day of January, 1846 ; but afterward, for that part of said canal said defendants secured a mere easement of the right of way, and not a fee simple interest in the lands through which they constructed the said canal ; that the only office of said defendants known to complainant, used for the entry of their said lands and the transaction of business connected with their said trust, under said acts of the General Assembly, is situated in the city of Terre Haute, Indiana, in the building on Sixth street, near Main, known as Dowling's Hall building, and Thomas Dowling, who resides in said city of Terre Haute, is the resident trustee, and is charged with the management of all business connected with the sale and entry of said lands, and the general management of the business of defendants connected with their said trust in the absence of the other trustees ; that on the 12th day of August, 1873, said lands above described, then being the property of said defendants as aforesaid, and being subject to sale and entry as aforesaid, complainant did, on

that day, go to the office of said defendants, in said city of Terre Haute, and present to said Thomas Dowling, one of said trustees, as aforesaid, a separate written demand to enter each of said pieces or tracts of land above described, and did with each separate demand present and tender to said Thomas Dowling, trustee, as aforesaid, the price for each separate piece or tract of land, at the rate of two dollars and fifty cents per acre, in the lawful currency of the United States, as that was the highest price per acre for which any of said land embraced in said deed or patent of the Governor of Indiana to said defendants could be sold, as provided in said act of the General Assembly as aforesaid; that said Dowling, as such trustee as aforesaid, and said trustees failed and refused to accept said written demand of plaintiff to enter said lands as aforesaid, and failed and refused to accept the money accompanying each demand made as aforesaid, and failed and refused to permit said plaintiff to enter and purchase said lands, as he was and is entitled by law to do.

It is stated that the plaintiff brings into court the sum of twenty-nine hundred dollars, lawful currency of the United States, being the price of said lands which he demanded to enter, at the rate of two dollars and fifty cents per acre, and now tenders the same to the defendants in open court.

Prayer, that the defendants be compelled to accept said money so tendered, or so much as shall be found to be the price of said lands fixed by said defendants in their classification of said lands, and that said defendants be compelled to issue to said plaintiff a separate certificate of purchase or entry for each piece or tract of land above described; also, for an injunction to restrain the defendants from selling said lands to any other person until the hearing, and for other proper relief.

The defendants demurred to the complaint for the reasons:

1. That it did not state facts sufficient to constitute a cause of action.

2. The complaint does not show a contract for the sale of said real estate reduced to writing and signed by the parties

thereto, nor does it show possession taken in pursuance thereof so as to take the case out of the statute of frauds.

3. The plaintiff in this action has no power to inquire into the franchises of the corporation and determine the question of forfeiture and abandonment in this collateral way, but must seek their direct remedy by *quo warranto*.

4. The power of the trustees of said canal in relation to the management of said canal, its bed, side-cuts, feeders, and reservoirs, are subject to their discretion and prudent control.

This demurrer was sustained on the ground that the complaint did not state facts sufficient to constitute a cause of action, which was, we may here remark, the only valid cause of demurrer stated. 2 G. & H. 77, sec. 50.

The error assigned is the sustaining of the demurrer to the complaint.

Counsel for appellees treat the case made as an action for the specific performance of a contract, or as a proceeding in the nature of a mandate to compel the trustees to discharge an official duty. We think the case is not one for the specific performance of a contract. There was no contract made, in any sense, the performance of which could be demanded. In our judgment, if the action can be sustained at all, it must be on the other ground, that is, as a proceeding in the nature of a mandate to compel the trustees to perform an official duty. As we understand the allegations of the complaint, the lands which the appellant sought to purchase are part of the lands granted by the United States to the State for the completion of the canal, and are part of the lands set apart for and used as reservoirs essential to the successful use of the canal. It is alleged that part of the lands are in Splunge creek reservoir and the residue of them in Birch creek reservoir. Were the trustees bound by law to sell the lands constituting, or on which were situated, these reservoirs?

It is not necessary that we should set out in full the legislation of Congress or of the State on this subject. By the eighth section of the act of January, 1846, the governor was required, after the performance of certain conditions by the

bondholders, to execute to the trustees, by their corporate name, a deed or patent " for the bed of the Wabash and Erie Canal, and its extensions, finished and to be finished from the Ohio state line to Evansville, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, locks, dams, water-power, and structures, and all materials provided or collected for its construction ; and all the property, right, title, and interest of the State in and to the same, with all its appurtenances ; and, also, all the lands and lots (not sold or disposed of) heretofore given, granted, or donated by the General Government to the State, to aid in the construction of said canal, or any part of it, or which may be hereafter acquired under or by reason of any existing grant, and all moneys due and to grow due and remaining unpaid on account of any sale or sales heretofore made of any canal lands so donated, and all moneys due, or to grow due on account of any existing leases of any water-power or other privilege on said canal, its side-cuts, feeders, basins, or other appurtenances ; said board of trustees to have, hold, possess, and enjoy the same as fully and absolutely as the State can or could do," etc.

The tenth section relates more particularly to the powers and duties of the trustees. Among other things, it is provided, that " it shall be the duty of said trustees to take charge of said canal, with all its appurtenances, and canal lands and property, and adopt and put in execution such plans and measures as they shall deem most expedient for the prosecution and completion of said canal, with its necessary side-cuts and feeders, to Evansville. * * * They shall attend to the sales of the canal lands embraced in the aforesaid deed of trust, which they may in their discretion (subject to the limitations hereinafter specified) sell for ready money or on credit."

The eleventh section, among other things, provides that the lands shall be classified, and enacts that the same shall " at all times be subject to sale " at the price fixed by law for each class.

The seventeenth section of the act reads as follows

"The majority of the said board of trustees shall have power and authority to act and decide in all cases; and the action or decision of the majority shall be binding on said board, and be deemed to be the action or decision of said board; excepting, however, that no sale or conveyance by said trustees of any of the land to be deeded by them as aforesaid, shall be valid or binding, unless concurred in, and the contract of sale or conveyance be signed by the trustee on the part of the State."

We pass over the question whether, independent of the seventeenth section, the trustees possessed the power to set apart the lands in question to be used for the purpose of forming reservoirs which might be essential to the proper use of the canal, and to withhold them from sale on that account. It may be conceded that there is no such power specifically conferred upon them by the act, but still it is a question whether the general powers given to them should not be construed so as to enable them to make such reservation.

We have come to the conclusion, however, that the case must be decided against the appellant upon the seventeenth section of the act, which we have already set out. While it is true that the lands were, according to the eleventh section, to be "at all times subject to sale," at the designated price, still we must not look to this section alone in deciding the question. The seventeenth section, as we have seen, forbids any sale or conveyance, unless concurred in and the contract of sale or conveyance be signed by the trustee on the part of the State. It does not appear that he has in any way assented to the sale of the lands in question, but, on the contrary, it is alleged in the complaint that he has, through the acting trustee, positively refused to give his consent. The legislature has seen fit to vest in him the power of determining whether any particular tract or tracts of land shall be sold or not. The courts have no power to overrule or control his judgment. Official discretion cannot be controlled by mandate. We had occasion to examine this question, and the authorities bearing upon it, in *The Mayor, etc., of Michigan City* v. *Roberts*, 34 Ind.

471, and we refer to that case, and the authorities there cited, in support of our views in this case.

In view of all the provisions of the statute on the subject, we think the ruling of the circuit court in sustaining the demurrer to the complaint was correct.

The judgment is affirmed, with costs.